RHODE ISLAND HOSPITAL TRUST COMPANY *vs.* JOHN W. NOYES *et al.*

PROVIDENCE—JULY 10, 1904.

PRESENT: Stiness, C. J., Tillinghast and Blodgett, JJ.

(1) *Wills.  Vested or Contingent Estates.  Trusts.  Income.*

Testamentary bequest as follows: "I give and bequeath to the Rhode Island Hospital Trust Company, [a fund consisting of stocks and money] in trust, to take, hold, and retain said shares and to invest the other portion in safe and productive securities with power to change or vary from time to time the investments and to receive the income, and from the net income to pay to my sister X. the sum of one thousand dollars yearly during her life, and the residue of said net income, or so much thereof as [the trustee] shall deem advisable to pay to or apply to the use or benefit and education of my grandson Y., until he attains the age of twenty-one years, and after he shall attain the age of twenty-one years and until he attains the age of twenty-five years all the residue of said net income to be paid to him for his own use.  And upon his attaining the age of twenty-five years my trustee shall pay over to him the whole of this fund and all accumulations for his own absolute use.  But if he shall decease before attaining the age of twenty-five years, then my trustee shall distribute said fund to his issue, if any then living, and in default of issue then as a part of and in such manner as is hereinafter provided respecting my residuary estate.  Provided that if my sister X. shall then be living, my trustee shall retain so much of this trust fund as may reasonably be necessary from the net income thereof to pay to her the quarterly payments, and upon her decease shall pay over the principal of this fund with all accumulations thereof in the same man-

ner as is provided respecting the residue of the fund, as the contingencies thereinbefore provided for, may exist at the time of the decease of my said sister."

Residuary clause:

Two-elevenths thereof to A.

Two-elevenths thereof to B.

One-eleventh thereof to C.

One-eleventh thereof to D.

One-eleventh thereof to E.

And one-eleventh thereof to each of the four children of F.

Provided that if either of said residuary devisees and legatees shall have theretofore deceased leaving issue then living, such issue shall take their parent's share per stirpes, and not per capita, to their own use forever. And if either shall have theretofore deceased, leaving no issue then living, then the share of such deceased shall be divided equally between the others of them then living or their issue, as the case may be, per stirpes, and not per capita. X. died in lifetime of testator. Y. died after attaining the age of twenty-one years, but before attaining the age of twenty-five years, without issue. C. survived the testator, but died without issue before Y. attained the age of twenty-one years. The parties in interest were the executor of Y., the residuary legatees, and the administrator of C.

The questions involved were (1) to whom the accumulations of income in the hands of the trustee at the time Y. attained twenty-one years belonged; (2) whether the dividends declared and interest falling due next after the death of Y. should be apportioned; and (3) the interest which the administrator of C. was entitled to:—

*Held*, that Y. took a vested interest in the fund subject to be devested upon his death without issue under the age of twenty-five years, and that upon his so dying all the accumulated income of said fund became a part of his estate and should be paid to his executor.

(2)  *Apportionment.  Interest.  Dividends.*

*Held*, further, that, under the general rule prevailing prior to the taking effect of Gen. Laws cap. 203, §§ 39, 45, the interest falling due prior to the death of Y. should be apportioned and paid to his executor, but that there would be no apportionment of dividends.

(3)  *Residuary Estate.  Time of Distribution.*

*Held*, further, that the word "theretofore" in the residuary clause had reference to the time of distribution, and not to the death of the testator; and that, C. having deceased without issue prior to the decease of Y., the residuary legatees surviving at the time of the death of Y. became entitled to all the residuary estate.

BILL IN EQUITY for instructions.    The facts are fully stated in the opinion.    Heard on bill and answers.

BLODGETT, J.    This is a bill in equity by the trustee under the will of the late Samuel M. Noyes, alleging that conflicting claims have been made, by various parties interested under the

will, in regard to the income and accumulations of income of a certain trust fund bequeathed by the will. The answers admit the allegations of the bill, the case is before the court for hearing on bill and answers, and the only questions in dispute are questions of law.

The bill alleges that the testator died on June 10, 1888; that his sister, Mary Noyes, died in his lifetime; that the testator's grandson Samuel Noyes Douglas survived him and lived to attain the age of twenty-one years, but died on October 23d, 1902, before attaining the age of twenty-five years, and without issue, never having been married; and that the respondent Samuel T. Douglas is the executor of the will of Samuel Noyes Douglas.

The clause of the will of Samuel M. Noyes which gives rise to the conflicting claims between the parties reads as follows: "I also give and bequeath to the said Rhode Island Hospital Trust Company, Two hundred shares of the Capital stock of the Illinois Central Railroad Company, and also all my 'leased line' Certificates of the same Company, and Fifty-eight shares of the Capital stock of the Central Park and North and East River Rail Road Company of New York City and two hundred shares of the preferred stock of the Chicago and North Western Railway Company and One hundred shares of the Capital stock of the Chicago and Alton Rail Road Company and Fifty shares of the Capital stock of the American Screw Company of said Providence, and Three hundred shares of the Capital stock of the Providence Gas Company, and the sum of Fourteen thousand dollars to be paid within three months after my death, in trust, to take, hold and retain said shares of stock and Certificates and to invest the other portion of said fund in safe and productive securities with power to change or vary from time to time the investments or reinvestments of the same and of said shares of stock and certificates according to the best judgment of the Finance Committee for the time being of said Trust Company and to receive and collect all the income of all this trust fund and from the net income thereof to pay to my sister, Mary Noyes, the sum of One thousand dollars yearly, and in equal quarterly payments, during her life, the first pay-

ment to be made at the end of three months after my decease and the residue of said net income, or so much thereof as the Finance Committee for the time being of said Trust Company shall deem advisable, to pay to or apply to the use or benefit and education of my said Grandson until he attains the age of twenty-one years; it being my desire, (but without making this in any way a condition of this trust for his benefit or education) that upon his attaining a proper age, say twelve years or thereabouts, my said Grandson shall be sent to said St. Paul's School at Concord, New Hampshire: and in which case I direct that said school bills, while he remains there shall be paid from said income. And after my said Grandson attains the age of twenty-one years and until he attains the age of twenty-five years for all the residue of said net income to be from time to time, in quarterly yearly payments, paid to him for his own use. And upon his attaining the age of twenty-five years, my said Trustee shall pay over to him my said Grandson, the whole of this fund and all accumulations thereof, that may then be remaining in the hands of my said Trustee for his own absolute use. But if my said Grandson shall decease before attaining the age of twenty-five years, then in that event immediately upon his decease, my said Trustee shall pay over and distribute the said fund to his issue, if any then living, and if more than one in equal shares and in default of such issue then as a part of and in such manner as is hereinafter provided respecting my residuary estate. Provided that if my said sister Mary shall then be still living my said Trustee shall retain so much of this trust fund as may reasonably be necessary from the net income thereof, to pay to her the quarterly payments aforesaid during her life and upon her decease shall pay over the principal of this fund so retained with all accumulations thereof in the same manner as is hereinbefore provided respecting the residue of this fund, as the contingencies therein before provided for, may exist at the time of the decease of my said sister.

"If after all the preceding bequests are provided for and paid, there shall remain sufficient of my estate I give and bequeath

to the Providence Public Library the sum of Five thousand dollars.

"All the rest, residue and remainder of all my estate real and personal, including all real estate I may hereafter acquire I give, devise and bequeath as follows:

"Two elevenths parts thereof to my half Brother McWalter B. Noyes.

"Two elevenths parts thereof to my said Nephew Henry J. Spooner.

"One eleventh part thereof to my Nephew Frederick Spooner.

"One eleventh part thereof to my Nephew Frank Spooner.

"One eleventh part thereof to my Grand Niece, Gertrude, daughter of my late nephew, Lucius S. Bowles.

"And one eleventh part thereof to each of the four children of my late Brother, John U. Noyes.

"Provided that if either of said residuary devisees and legatees shall have theretofore deceased, leaving issue then living, such issue shall take their parents share, per stirpes and not per capita to their own use forever.

"And if either shall have theretofore deceased leaving no issue then living, then the share of such deceased shall be divided equally between the others of them then living or their issue as the case may be, per stirpes and not per capita to their own use forever."

The parties respondent to this suit, other than the respondent Samuel T. Douglas, as executor of the will of Samuel Noyes Douglas, are the residuary legatees under the will of the testator, Samuel M. Noyes, or the personal representatives of such residuary legatees.

(1)   The questions involved are, in a word, first, to whom the accumulations of income—amounting to about a hundred thousand dollars—in the hands of the trustee at the time Samuel Noyes Douglas attained twenty-one, belong; and second, whether the dividends declared and interest falling due next after the death of Samuel Noyes Douglas should be apportioned; and third, the interest to which Henry J. Spooner is entitled as administrator of Frederick Spooner, a nephew of the testator and one of the residuary legatees, and who survived

the testator, but died without issue on May 20, 1893, and before Samuel Noyes Douglas attained the age of twenty-one years.

The answer to the first question obviously depends upon the nature of the interest created by the will as to Samuel Noyes Douglas. If this is a vested interest, it is conceded that the question must be resolved in favor of his executor; and if this is a contingent interest, the surviving residuary legatees claim that the interest of Frederick Spooner did not vest until after the death of Samuel Noyes Douglas, and that, Frederick Spooner having predeceased without issue, they alone are entitled to all the fund and accumulations; while the administrator of Frederick Spooner claims that his intestate was entitled to his proportionate share thereof, under the clause above cited, "as a part of and in such manner as is hereinafter provided respecting my residuary estate."

The respective contentions, in brief, are, on the one hand, that the bequest to Samuel Noyes Douglas was conditional and contingent upon his attaining the age of twenty-five years, and that, he having deceased before reaching that age, the estate never vested; and the opposing contention is that the bequest vested immediately upon the death of the testator, and that the present enjoyment of it was postponed until the age of twenty-five years.

Now it is obvious that the answer to the question whether Samuel Noyes Douglas took a vested interest under the will in question must depend upon the definition of such an estate; and in the event that the language is ambiguous, or its construction is doubtful, it is important to know whether there be any well-settled rule in favor of or against the creation of such interests.

In *Staples and Pearce, Trustees,* v. *D'Wolf et als.,* 8 R. I. p. 118, the court declare the test whether an estate be vested or contingent to be as follows: "The question is always,—is futurity annexed to the substance of the gift? if so, the vesting is postponed; or is it annexed to the time of payment only? if so, the legacy vests immediately. And if the gift be expressly to A,. and expressed to be payable or to be paid at a certain time, time is held to relate to the payment only, and not to the

gift itself, and it confers a vested interest on the testator's death," adding also, "The law favors the vesting of estates."

In the recent case of *Safe Deposit & Trust Co.* v. *Wood*, 201 Pa. St. p. 427 (1902), the rule is thus stated: "The question of vested or contingent is not to be tested by the certainty or uncertainty of obtaining the actual enjoyment; for that would make the character of the estate depend, not upon the terms of its creation, but on the form of the result. Neither does it depend upon the defeasibility or the indefeasibility of the right of possession; for many estates are vested without possession, as well as with, which are yet defeasible. If there is a present right to a future possession though that right may be defeated by some future event, contingent or certain, there is nevertheless a vested estate." And see *Doe* v. *Considine*, 6 Wall. p. 474–476; *Cropley* v. *Cooper*, 19 Wall. p. 167.

The rule of law concerning the vesting of estates was thus laid down by the House of Lords in *Duffield* v. *Duffield*, 1 Dow & C. 311, in which Lord Eldon in giving his opinion expressed the hope "that this will be a leading case," as follows: "In consideration of these circusmtances, the Judges, from the earliest times, were always inclined to decide that estates devised were vested; and it has long been an established rule for the guidance of the Courts of Westminster, in construing devises, that all estates are to be holden to be vested, except estates in the devise of which a condition precedent to the vesting is so clearly expressed that the courts cannot treat them as vested without deciding in direct opposition to the terms of the will. If there be the least doubt, advantage is to be taken of the circumstances occasioning the doubt; and what seems to make a condition, is holden to have only the effect of postponing the right of possession." And this rule has frequently been applied even when the time at which the estate shall vest has been expressed in the will.

Thus in *Taylor* v. *Frobisher*, 5 De G. & Sm. 191 (1852), the testator left the sum of £1,000 in trust to pay the income to a daughter for life, "and from and after her decease upon trust to pay, apply, and dispose of the said principal sum of £1,000, and all interest due thereon, unto, between, or amongst all and

every the child and children of my said daughter in equal shares, or if there shall be but one such child, then the whole to such only child, to be a vested interest or vested interests on their respectively attaining the age of thirty years; and if any child or children of my said daughter should die under the age of thirty without lawful issue, the share or shares of him, her, or them so dying, as well original as accruing by survivorship, shall go to the survivors or survivor in equal shares if more than one, and become vested at such ages or times as his, her, or their original share or shares; and upon this further trust, that they my said trustees do and shall, after the decease of my said daughter, and until the share or respective shares of such child or children as aforesaid shall become vested and payable by and out of the interest, dividends, and annual proceeds of the said sum of £1,000, pay and apply to or for the maintenance and education of the same child or children respectively, such yearly sum or sums of money as to them my said trustees shall seem meet, not exceeding the interest of the expectant share of such child or children respectively in the said principal sum of £1,000, and I hereby direct and declare, that, in case all the children of my said daughter shall die under the age of thirty years and without lawful issue, the said" (trustees)  .  .  .  "shall stand possessed of the said principal sum of £1,000, upon trust, to pay or transfer the same unto my said son Thomas Frobisher, his executors, administrators and assigns."

The daughter, Ann Taylor, at her decease left one son who thereafter reached the age of thirty years, but having had issue another son who died before his mother, at the age of twenty-seven and unmarried, the Vice-Chancellor said: "The question in this case depends upon the meaning which in construing this will, is to be attached to the word 'vested' as used by the testatrix,  .  .  .  I consider that the testatrix in this will uses the word 'vested' not in its ordinary sense, but in the sense of 'not subject to be divested,' or 'indefeasible,'  .  .  . In this disposition, as well as in what follows it, the testatrix contemplates that each child, before attaining the age of thirty years, was, in some sense at least, to be entitled to a share in the

fund, which she designates as the share of such child. If the child should die under thirty without issue, his share is to go to the others. If, dying under the age of thirty, he should leave issue, his share is not to go to the others; the original gift of the share in that case remains unaffected. The conclusion appears to me irresistible, that the testatrix intended the child so dying and leaving issue to retain his share as an interest transmissible to his representatives, and considered that he would do so by force of the original gift. . . . So, where the testatrix, in the ultimate disposition, gives the whole fund to Thomas Frobisher in the event of all the children of Ann Taylor dying under the age of thirty years and without issue, she must have meant that to be the only event in which, under the previous dispositions, the fund would be undisposed of. In the event of an only child dying under thirty years and leaving issue, the fund was not to go over to Thomas Frobisher; because the testatrix considered, that, under the previous dispositions, the deceased child took an absolute interest in the fund. The object of the testatrix was to make a complete disposition of the fund; and, in such cases, the Court always endeavors to construe the will so as to prevent an intestacy as to any part of it.

"I consider the meaning of the will to be, that all the children of Ann Taylor were to take vested interests in the fund, subject to be divested by their death under thirty, without issue; so that a child, on attaining thirty, and not before, could take an indefeasible interest in his share, and be entitled to payment."

The Vice-Chancellor later observes that while the discretionary power given to the trustee may perhaps afford an argument against the vesting of the shares, "on the other hand the ultimate gift over is of the principal sum only without interest, seeming to show that the testatrix considered that she had entirely disposed of the interest by the previous dispositions."

And in *Poole* v. *Bott*, 11 Hare, 33 (1853), the provisions of the will were as follows: "Upon trust for his four sons, John, Thomas, Charles, and Philip, in equal shares, one moiety or half part of such shares to become vested in and payable and

transferable to them respectively when and as they should respectively attain the age of twenty-one years, and the remaining moiety or half part thereof to become vested in and payable and transferable to them when and so soon as his youngest son for the time being should attain the age of twenty-one years, provided, and he did thereby declare his will to be, that if any one or more of his said sons should die before the respective moieties of his or their share or shares should become vested, payable, and transferable as last aforesaid, then and in such case the unvested share or shares of him or them so dying, should go and accrue to the survivors or survivor, or others or other of his said sons, and be equally divided amongst them if more than one, share and share alike; and the same should become vested, and payable or transferable, at such ages, days, and times, as his or their original portion or portions were thereby directed to become vested and payable, or transferable, as aforesaid; and, in case of the death of any other of his said sons before such accruing or surviving share or shares should become vested as aforesaid, then every such accruing or surviving share should again be subject and liable to such right, chance, contingency, or condition, or accruer to and amongst the survivors or survivor and others or other of his said sons, as thereinbefore is provided concerning the said original portion or portions, or share or shares.

"Then followed provisions for the maintenance of the sons during their minorities, and a limitation of the residuary personal estate in case all his said sons should die under twenty-one years of age, upon trust for such person or persons as, at or immediately upon the decease of all his said sons without issue as aforesaid, would be entitled to his (the testator's) personal estate under the statute of distribution, in case he had died intestate immediately after such failure of issue."

The Vice-Chancellor held that: "Looking at the whole will, and notwithstanding the testator spoke of the shares as unvested, and of the time at which they should vest, there was an immediate devise and gift of the several shares of the real and personal estate to the sons, liable, however, to be devested in the events referred to in the will."

In *Armytage* v. *Wilkinson*, 3 L. R. App. p. 372 (1878), the Privy Council followed and approved *Taylor* v. *Frobisher* and *Poole* v. *Bott*, in the decision of an appeal from the construction of a colonial will whose material provisions were as follows:

"'I will and direct my said trustees to stand possessed of the securities in or upon which the said two-thirds of the said net moneys shall be invested as aforesaid in trust for my child, if only one, or for all my children, if more than one, in equal shares, and so that the interest of a son or sons shall be absolutely vested at the age of twenty-one years, and of a daughter or daughters at that age or marriage, and so that the share or shares, as well original as accruing, of a son or sons dying under the age of twenty-one years, or of a daughter or daughters dying under that age, or without having been married, shall accrue to the other or others of my said children; and if more than one, in equal shares, and be vested as aforesaid, and so that the share or shares, as well original as accruing, of each daughter, shall be received, enjoyed, and disposed of as her separate estate, &c.   And I declare that in case any child of mine being a son shall die under the age of twenty-one years leaving issue, then the share, as well original as accruing, which the child so dying would have acquired if he had lived to attain the age of twenty-one years, shall be held by my trustees upon trusts, and subject to provisions in favour of the issue of the child of mine so dying corresponding with the trusts and provisions hereinbefore contained in favour of my child and children, and on the failure of such trusts and provisions shall be disposable as if this declaration had not been inserted.   .   .   .   But if no object of the trusts hereinbefore declared concerning the said two-third parts of the said net moneys shall acquire an absolutely vested interest, then, if my said wife shall be living at the time of the failure of the said trusts, the said two-third parts of the said net moneys and the investments thereof shall be in trust for her absolutely; but if my said wife shall not then be living, the same shall be in trust for such of the children of my brothers,   .   .   .   and of my brothers-in-law   .   .   :   as shall be living at such last-mentioned time, in equal shares, the share

of each of such children being a male to vest at the age of twenty-one years, and being a female at that age or marriage.' This disposition is followed by a clause for maintenance and advancement on the following terms: 'I declare that my said trustees shall have power to apply the whole or any part of the annual income to which each or any object, being a minor, of the respective trusts and provisions hereinbefore contained shall be entitled, or presumptively entitled, in or towards the maintenance and education or otherwise for the benefit of such object during minority, whether such object being a female shall be married or not, and the unapplied incomes shall be accumulated, and the accumulation thereof shall be liable to be applied in like manner, and, subject to such liability, shall be deemed accretions to the capital whence the same income arose, and that my said trustees shall also have power to apply any part not exceeding one-third of the capital to which each or any male object of the same respective trusts shall be entitled, or presumptively entitled, in or towards the establishment or advancement in the world of such object.' "

It was there decided, upon the question whether the interests given to the children were vested or contingent, as follows: "Their Lordships are of opinion that these interests were at the date of the testator's death vested, though subject in certain events to be divested," and upon the provision for the accumulation of unapplied income it is said: "This last provision points distinctly to the ascertainment and vesting in interest of the original share of each child from the date of the testator's death." And see also, to the same effect, *In re Edmondson's Estate*, 5 L. R. Eq. 389, and *In re Baxter's Trusts*, 10 Jur. N. S., 845, and *Berkeley* v. *Swinburne*, 16 Sim. 275; *Phipps* v. *Ackers*, 9 Cl. & F. 583, in which the House of Lords also affirmed *Broomfield* v. *Crowder;* 1 Bos. & Pul. N. R. 313, in the same tribunal. *Phipps* v. *Ackers* was followed in *Whitter* v. *Bremridge*, 2 L. R. Eq. 736, and in *Finch* v. *Lane*, 10 L. R. Eq. 501.

In like manner the courts of this country favor such a construction of a will as will create a vested rather than a contingent estate. Says Mr. Justice Gray, speaking for the Su-

preme Court of the United States in *McArthur* v. *Scott*, 113
U. S. Rep. p. 378: "For many reasons, not the least of which
are that testators usually have in mind the actual enjoyment
rather than the technical ownership of their property, and that
sound policy as well as practical convenience requires that
titles should be vested at the earliest period, it has long been a
settled rule of construction in the courts of England and
America that estates, legal or equitable, given by will, should
always be regarded as vesting immediately, unless the testator
has by very clear words manifested an intention that they
should be contingent upon a future event."

And in *Ross* v. *Nettleton*, 24 R. I. at p. 127, this court held,
"that the law favors the vesting of estates immediately upon
the death of the testator, and will not regard the remainder as
being contingent, in the absence of a clear intent on the part
of the testator to that effect," citing cases.

Says Mr. Justice Story, in delivering the opinion of the Cir-
cuit Court of the United States for the District of Rhode
Island, in *Sisson* v. *Seabury*, 1 Sum. p. 239: "The general
rule is, that in construing wills, the intention of the testator
is the pole star to guide and govern the Court." It is obvious,
too, that the intent of the testator must be gathered from the
whole will, and it therefore becomes necessary in the first place
to consider the language he has used in that instrument, and
then to consider the legal effect thereof as adjudicated in
similar cases.

A special fund is set apart at once from the testator's estate,
and given in trust to pay from the net income thereof $1,000
yearly to the testator's sister during life, "and the residue of
said net income, or so much thereof as the Finance Committee
for the time being of said Trust Company, shall deem advisable
to pay to or apply to the use or benefit and education of my
said Grandson until he shall attain the age of twenty-one
years." Between twenty-one and twenty-five the whole of
the net income is to be paid to Samuel Noyes Douglas "for his
own use." "And upon his attaining the age of twenty-five
years, my said Trustee shall pay over to him my said grandson,
the whole of this fund and all accumulations thereof, that may

then be remaining in the hands of my said Trustee for his own absolute use." In the event of the death of Samuel Noyes Douglas before the age of twenty-five years and without issue, there follows a gift over of "said fund" to the residuary legatees. It is contended by the residuary legatees that the words "said fund" signify in law the fund and the accumulations of income, which are not to be paid to Samuel Noyes Douglas until he reaches the age of twenty-five years, while the executor contends that the gift, being only of "said fund" without mentioning the accumulations of income, is to be limited to the principal only of the fund expressly so given, in view of the express mention of the accumulations which are to be paid to Samuel Noyes Douglas at the age of twenty-five. The latter contention is certainly strengthened by the succeeding clause providing for the reservation of "so much of this trust fund" as may be necessary to pay the annuity to Mary Noyes during her life, "and upon her decease shall pay over the principal of this fund so retained, with all accumulations thereof, in the same manner as is hereinbefore provided respecting the residue of this fund as the contingencies thereinbefore provided for may exist at the time of the decease of my said sister,"—inasmuch as the accumulations of income on the Mary Noyes trust fund are specifically given over to the residuary legatees on her death, and the omission to mention the accumulations on the bequest over to the residuary legatees of the "said fund" in the event of the death of Samuel Noyes Douglas before the age of twenty-one, as well as the specific devise of the accumulations to Samuel Noyes Douglas at twenty-five, clearly indicate that when the testator intended accumulations to go to the residuary legatees, he said so explicitly. Indeed, in the event that Samuel Noyes Douglas had reached the age of twenty-five before the death of Mary Noyes, the Mary Noyes trust fund must of necessity have been composed wholly of the principal of the original fund inasmuch as the accumulations on that fund were payable to Samuel Noyes Douglas at twenty-five.

It is, however, strongly urged that the provision in event of Samuel Noyes Douglas dying before the age of twenty-one con-

stitutes a conditional devise, and that it is not natural to suppose that the testator intended that the principal of the fund should go over into the residuum and the accumulations of income from the same fund should go elsewhere. If the language of the instrument in respect of the distinction apparently in the mind of the testator concerning the fund and the accumulations of income from the fund as evidenced by the specific provisions as to income in two cases and the omission of reference to income in the third case be not a sufficient reply to this objection, it may also be urged that to hold the devise to Samuel Noyes Douglas to be contingent upon his attaining the age of twenty-five renders nugatory this very devise over to the residuary legatees in the event of his decease before the age of twenty-five, since if it is a contingent bequest only, it would immediately pass to the residuary legatees in the event of his death, by the general residuary clause without further and specific provision therefor, thus violating another well established rule of construction, that effect should be given if possible to every provision in the instrument under consideration. Indeed, the propriety and necessity of this clause only arises upon holding that the testator himself considered that he had given a vested estate in this fund to Samuel Noyes Douglas which he must specifically divest by an express devise over to the residuary legatees in the event of the death of Samuel Noyes Douglas before the age of twenty-five. The necessary implication is that all the income is the property of Samuel Noyes Douglas as separated from the principal fund, since all that is left to the trustees is to determine in what manner it may be best employed for him, whether by paying it all to him, or by expending only a portion of it for his maintenance and education.

And it is to be observed, also, that both the right of enjoyment of the income, subject to the discretion of the trustee as to the amount necessary for maintenance and education under the age of twenty-one, and absolutely thereafter, is given to Samuel Noyes Douglas, and that the trustee can not appropriate any accumulations of income for any other purpose or pay the same to any other person, but must hold the

same for his benefit, to be paid him at the age of twenty-five; so that the trustee is not endowed with any legatary power, but is simply directed at a specific time to pay what the testator had given and only deposited with the trustee to pay. And, more than this, in the event of the decease of Samuel Noyes Douglas, whether before or after the age of twenty-one years, there is recognized in him in this clause a continuing capacity of transmission at all times to his issue even in the event of the failure of the contingency upon the happening of which it is claimed that the estate vested in him, and that the devise over to the residuary legatees does not take effect unless Samuel Noyes Douglas shall decease without issue. Dying under twenty-five, without issue, the fund is to go to the residuary legatees; but dying under twenty-five, leaving issue, the fund is not to go to the residuary legatees, but the original gift of the fund to him in that case remains unaffected. So that it is necessary to consider such accumulated income as immediately vested in right though not in possession—*debitum in praesenti solvendum in futuro*—and to consider such a capacity of transmission to issue as inconsistent with the original creation of a contingent interest in the estate so transmitted and as necessarily indicating the creation of a vested interest therein.

Again, it is urged that the amount of the income to be paid Samuel Noyes Douglas until he is twenty-one is discretionary with the trustee; and hence it is argued that the interest of Samuel Noyes Douglas in the fund was a contingent and not a vested interest. The exact language of the devise is as follows: "The residue of said net income, or so much thereof as the Finance Committee for the time being of said Trust Company shall deem advisable to pay to or apply to the use or benefit and education of my said Grandson until he attains the age of twenty-one years." Upon this provision the language of Jessel, M. R. in *Fox* v. *Fox*, 19 L. R. Eq. 286 (1875), is entirely in point:

"The first question is, whether a gift contained in a direction to pay to legatees on attaining a certain age, followed by a gift of the interest for maintenance, is vested?" And then, continuing: "There still remains the difficulty that the gift

here is not a gift of the whole income absolutely for maintenance; there is a discretionary power to apply the whole income, or so much as the trustees may think proper, and the question is, whether that is a gift of the whole interest within the rule as laid down in *Watson* v. *Hayes*, (5 Myl. & Cr. 125) and the other cases I have referred to.   On that point *Harrison* v. *Grimwood*, (12 Beav. 192) is a distinct authority.   There the legacy was given to a class, followed by a direction, during the minority of the members of the class, to apply the interest, 'or a competent portion thereof,' for maintenance; and the Court held the legacy was vested.   Lord Langdale does not appear to have considered the indication of intention derived from the direction to pay the whole income as affected by the words enabling the trustees to apply a competent portion for maintenance; he treated it as a gift of the whole income followed by a discretion to apply less than the whole income; and that appears to me to be a rational view.

"Being opposed to the frittering away of general rules, and thinking that such rules, so long as they remain rules, ought to be followed, I hold that a gift contained in a direction to pay and divide amongst a class at a specific age, followed by a direction to apply the whole income for maintenance in the meantime, is vested, and not the less so because there is a discretion conferred on the trustees to apply less than the whole income for that purpose.

"I also think that the gift over, if not conclusive on the question, certainly aids the construction adopted by me."

Counsel for the residuary legatees have cited upon their brief numerous English cases seeking to show that *Fox* v. *Fox*, *supra*, was opposed to earlier decisions, and that the later decisions in England upon this question were also in opposition to *Fox* v. *Fox*, the latest case cited being *In re Wintle*, 75 L. T. N. S. 207 (1896), and cases there cited.   But in that case there was no gift over, and North, J., says that, in *Fox* v. *Fox*, "There was a gift over which would have been conclusive as to the construction, but Jessel, M. R., decided the case on the construction of the clause I have read, and it would be unfair to treat his remarks as mere *obiter dicta*, and the case as

having been decided on the subsequent clause because that clause would have put the matter beyond question." But in the case at bar there is also a gift over.

A later case than *In re Wintle* is *Turney* v. *Turney*, 2 Ch. Div. L. R. 739 (1899), in which Lindley, M. R., says of *Fox* v. *Fox*, p. 747: "I am by no means satisfied that *Fox* v. *Fox* was wrongly decided. So far as I have considered it, my impression is that the decision is very good sense and very good law," and Jeune, J., concurs in this approval, saying: "With regard to the authorities, after reading *Fox* v. *Fox*, it appears to me to contain a very careful review of the prior authorities, and, so far as I am able to express an opinion, I agree with the view taken by Jessel, M. R., that there is to be gathered from the earlier cases a general rule, and that rule appears to me to be founded on good sense. So far, therefore, from thinking that *Fox* v. *Fox* ought to be treated as overruled, I should be glad to think that it is established as law."

And in the still later case of *Gossling* v. *Elcock* (1902), 1 Ch. Div. L. R. 945, Mr. Justice Eady, while holding that the will then before the court did not give a vested interest in one John Tom Gossling, observes that *Fox* v. *Fox*, though dissented from in *Re Wintle, supra,* "was nevertheless recently approved by the Court of Appeal in *Re Turney,*" *supra,* and continues,—"The actual decision in *Fox* v. *Fox* is not opposed to the opinion which I have formed in the present case, as there the power given to the trustees was to apply from time to time the income of the presumptive share of each child, or so much thereof as the trustee might think proper for his maintenance and education, until such share should become payable. It was not the case of a power to apply the income of an entire fund in the maintenance of several objects." And on appeal, in 1903, 1 Ch. Div. L. R. 448, it was held in *Gossling* v. *Elcock, supra,* that the language there used created a vested and not a contingent interest in John Tom Gossling, Collins, M. R., saying that "there is no further difficulty in the case, because it is admitted that the rule in *Hanson* v. *Graham,*" (6 Ves. 239) "applies." But *Hanson* v. *Graham* is cited and relied upon in *Fox* v. *Fox*, and Romer, L. J., concurs with the Master of the

Rolls in his construction of the will in question, while approving the statement of the law made by Mr. Justice Eady below, saying: "I agree. We are really not differing from my brother Swinfen Eady on any question of principle, but simply on a small point concerning the construction of a very peculiar will." While the provisions of the will in *Gossling* v. *Elcock* are not the same as the provisions of the will now before us, yet these decisions are pertinent as expressing the approval of the rule of law laid down in *Fox* v. *Fox*.

Two years prior to the decision of *Fox* v. *Fox, supra,* the Supreme Court of the United States, citing both *Hanson* v. *Graham, supra,* and *In re Hart's Trusts,* 3 De Gex & Jones, 202, also cited in *Fox* v. *Fox,* in the case of *Cropley* v. *Cooper,* 19 Wall. 174, thus declared: "Where a bequest is given by a direction to pay when the legatee attains to a certain age, and the interest of the fund is given to him in the meantime, this shows that a present gift was intended, and the legacy vests in interest at the death of the testator." And the court says, p. 176, that the doctrine of Boraston's Case (3 Co. Rep. 21), which related to real property, "has been applied by American courts to bequests of personalty."

In *Bland* v. *Williams,* 3 M. & K. 411, the rule as to vesting was thus declared by Leach, M. R.: "Whether in a gift of this nature the time of vesting is postponed, or only the time of payment, depends altogether upon the whole context of the will. If the gift over is simply upon the death under twenty-four, then the gift could not vest before that age. In this case, the gift over is not simply upon the death under twenty-four, but, upon the death under twenty-four without leaving issue. If upon a death under twenty-four, at whatever age issue was left, then the gift over is not to take place. It is in effect, therefore, a vested interest with an executory devise over, in case of death under twenty-four, without leaving issue. All the cases upon the subject, except the one before Lord Gifford" (*Bull* v. *Pritchard,* I Russ. 213), "are reconcilable with this distinction."

The recent case of *Smith et al.* v. *Parsons,* 146 N. Y. Rep.

116 (1895), is closely allied to the case at bar. The clause of the will in question was as follows:

"I authorize and empower my executors to divide the other one equal half part or share of my estate into as many equal shares as I may leave children me surviving, and to invest and re-invest each share, and to collect and receive the interest of each share, and to apply the same, or so much thereof as they may deem necessary to the use of the child for whom said share is intended, and to accumulate the remainder of said income until the said child shall attain the age of twenty-one years, or sooner die, and upon such child attaining the age of twenty-one years, to pay over all accumulations of such income to such child and thereafter to apply the income and interest of such share to the use of such child during the remainder of his or her natural life; and upon the death of such child before or after his or her attaining the age of twenty-one years, to assign, transfer and set over such share to the children, if any, of such child, the issue of a deceased child to take the share the parent would have taken if living, and in case of the death of any child of mine leaving no issue him or her surviving, to assign, transfer and set over the share intended for such child to my then surviving issue, by representation and not *per capita.*"

The Court of Appeals, speaking by Mr. Justice Bartlett, said: "The daughter Martha died under age, intestate and unmarried, leaving her sister Rosalie surviving, an infant under the age of fourteen.

"At the time Martha died the accumulations of income upon her share of the trust estate amounted to nearly thirty-seven thousand dollars, which is claimed by her mother as administratrix of her estate, and is also claimed by the guardian *ad litem* of Rosalie, her surviving sister.

"The single question presented by this appeal is whether the accumulations of income upon Martha's share vested as they were paid in, or was the vesting postponed until she attained the age of twenty-one years?

"This precise point has never been directly passed upon by

this court, and the opposing views of learned counsel have been fully presented."

"So long as both of his daughters lived neither had any interest in the principal of the estate; until she attained her majority she was entitled to so much of the income of her trust as was necessary in the judgment of the trustees, and the remainder was to be accumulated until she attained the age of twenty-one years; at that time she was entitled to all accumulations of income, and thereafter received the income of the principal sum during life. If her sister died before or after attaining the age of twenty-one years, leaving no issue, the trustees were directed 'to assign, transfer and set over the share intended for such child to my then surviving issue,' etc.

"The learned counsel for the appellant insists that the words, 'the share intended for such child,' carry with them the income not used during minority, and that the true meaning of the will is that the income was designed for the use of the infant during minority, and the surplus was intended for her if she reached majority, but not otherwise; that until she attained her majority she had only a presumptive or conditional right to the income.

"We are unable to adopt this view; but, taking the whole will together, we think it was the intention of the testator that all accumulations of income during infancy should vest at once, and only the time of payment or enjoyment was postponed until majority.

"It was obviously the intention of the testator to discriminate between principal and income; if a child died the principal of her share passed to her issue, or to testator's other issue, or to collaterals, but the income was dealt with as a distinct fund.

"Until a child died she took absolutely the entire income of her share.

"When the testator, in the event of a child's death, directed transfer of 'the share,' he employed accurate language used in other portions of the will to describe the principal sum." And see *Kimball* v. *Crocker*, 53 Me. 263; *Smith* v. *Campbell*, 75 Hun. 155.

There remains the further objection, on the part of the resi-

duary legatees, that the postponement of the payment over of the principal until the age of twenty-five years indicates a postponement of the time of vesting until that age has been reached, and that a contingent interest only existed meanwhile. The contention is not without force, but a sufficient answer may be found in the well-recognized principle that an interest may be vested in right, though not in immediate possession.

But it is also contended that, inasmuch as the accumulations are not specifically mentioned in the devise over to the residuary legatees, there is an intestacy in that respect. Of this contention it is sufficient to say, in the words of Sir Richard Pepper Arden, Master of the Rolls, in *Booth* v. *Booth*, 4 Ves. Jr. p. 407: "Every intendment is to be made against holding a man to die intestate, who sits down to dispose of the residue of his property."

Upon mature consideration of the language of the will, showing an immediate separation of this fund from the *corpus* of the estate, and the appointment of a trustee for and the gift of interim income to Samuel Noyes Douglas, the language used in the devise over, the strong presumption in favor of vested as opposed to contingent interests, the decisions of the courts upon the rules of construction applicable in similar cases, as well as of the objections urged against the creation of a vested interest in the case before the court, we are of the opinion that Samuel Noyes Douglas took a vested interest in the fund in question, subject to be devested upon his death, without issue, under the age of twenty-five years, and that upon his so dying all the accumulated income of said fund became a part of his estate and should be paid by said trustee to his executor.

In further support of the conclusion to which we have arrived, the following decisions are in point: *Bayard* v. *Atkins*, 10 Pa. St. 15; *Collier's Will*, 40 Mo. 287; *Fisher* v. *Johnson*, 38 N. J. Eq. 46; *Dusenberry* v. *Johnson*, 59 N. J. Eq. 336 (1900); *Plaenker* v. *Smith*, 52 At. Rep. (Md.) 606, (1902); *Harris* v. *Cook*, 71 So. W. Rep. 1126; *Felton* v. *Sawyer*, 41 N. H. 202; *Chew's Appeal*, 37 Pa. St. p. 29; *Provenchere's Appeal*, 67 Pa. St. 463; *Watkins* v. *Quarles*, 23 Ark. p. 188; *Baker* v. *McLeod*, 79 Wis. 534; *Murtha* v. *Wilcox*, 47 App. Div. N. Y. 526; *Van*

*Wyck* v. *Bloodgood*, 1 Bradf. (N. Y.) p. 166; *Weston* v. *Weston*, 125 Mass. 268; *Zartman* v. *Ditmars*, 37 App. Div. Hun.173; *In re Rouse's Estate*, 9 Hare, 649; *Dundas* v. *Wolfe Murray*, 1 H. & M. 425; *Lister* v. *Bradley*, 1 Hare, 10; *Fonnereau* v. *Fonnereau*, 1 Ves. 118; *Potts* v. *Atherton*, 28 L. J. Ch. 486; *Harrison* v. *Grimwood*, 12 Beav. 192; *Eccles* v. *Birkett*, 4 De G. & S. 105; *Re Downe's Trust*, 23 L. T. 588; *In re Bunn, Isaacson* v. *Webster*, 16 Ch. Div. 47; *Bird* v. *Maybury*, 33 Beav. 351; *Pearman* v. *Pearman*, 33 Beav. 396; *Hammond* v. *Maule*, 1 Coll. 281; *Bree* v. *Perfect*, 1 Coll. 128; *In re Peek's Trusts*, L. R. 16 Eq. Cas. 221, commented upon by Jessel, M. R., in *Bolding* v. *Strugnell*, 24 W. R. 339; *Murray* v. *Addenbrook*, 4 Russ. 407; *In re Smith's Will*, 20 Beav. 197; *Doe d. Dolley* v. *Ward*, 1 Per. & Dav. 568; *Hanson* v. *Graham*, 6 Ves. Jr. 239; *Doe d. Roake* v. *Nowell*, 1 M. & S. 327; *Andrew* v. *Andrew*, 1 L. R. Ch. p. 417; *Goodtitle* v. *Whitby*, 1 Burr 228; *In re Bevan's Trusts*, 34 L. R. Ch. 716; *Davies* v. *Fisher*, 5 Beav. 201; *Blease* v. *Burgh*, 2 Beav. 221; *Josselyn* v. *Josselyn*, 9 Sim. 63.

(2)   This conclusion disposes of all claims arising from the contention of the intestacy of the testator as to such income, and leaves next to be considered the question whether the interest falling due and dividends declared next after the death of Samuel Noyes Douglas should be apportioned. Sections 39 and 45, cap. 203, Gen. Laws, are as follows:

" SEC. 39.   If the person entitled to such annuity, use, rent, income, or interest dies, or if such contingent event happens, before the termination of a year from the time when the whole of the annual amount for the preceding year has become due, such annuity, use, rent, income, or interest for the then current year shall be apportioned, and such person or his representatives shall be entitled to receive a proportionate part thereof, unless it is otherwise provided in such will or instrument."

" SEC. 45.   This chapter and the provisions thereof shall not extend to any will made and executed prior to the first day of February, eighteen hundred ninety-six, except as to those provisions hereof which contain substantially the same provisions of any statute of this state existing at the time of the making and execution of such will and applicable thereto; but the law

in force at the time of the excution of such will made and executed prior to said date shall govern the same. And every will which shall, on or after said first day of February, be re-executed or revived by any codicil, shall for the purposes of this chapter be deemed to have been made at the time at which the same shall be so re-executed or revived."

But the will in question bears date March 4, 1885, and the last codicil thereto was executed December 17, 1886, and consequently these provisions do not apply. It follows that under the general rule prevailing prior to the taking effect of the statute, the interest falling due prior to the death of Samuel Noyes Douglas, October 23, 1902, is to be apportioned and paid to his executor, but that there is to be no apportionment of dividends.

(3)    The other residuary legatees contend that they are entitled to the share of the fund which would have come to Frederick Spooner had he survived the death of Samuel Noyes Douglas, by virtue of this provision relative to the residuary legatees, viz.: " And if either shall have theretofore deceased leaving no issue then living, then the share of such deceased shall be divided equally between the others of them then living or their issue as the case may be per stirpes and not per capita to their own use forever." The decisive point in this clause is as to the meaning of the word " theretofore." The contention of the administrator of Frederick Spooner is that reference is thereby made to the death of the testator, and the opposing contention is that the time of distribution is intended. We are of the opinion that the latter contention is the correct one. A vested interest being given to Samuel Noyes Douglas from the death of the testator of necessity implies that the word " theretofore" must refer to the period of distribution at which time only the residuary legatees would become entitled. This view is strengthened by the direction to pay over the fund "*immediately* upon his decease," thus seemingly emphasizing the time of the decease of the grandson as the period of distribution. And see *Chafee* v. *Maker*, 17 R. I. p. 745.

We are, accordingly, of the opinion that upon the death of Frederick Spooner, without issue, before the death of Samuel Noyes Douglas, the residuary legatees surviving at the time of

the death of the latter became entitled to all the residuary estate.

STINESS, C. J., dissenting.   I am unable to concur with that part of the opinion of the court which holds that Samuel Noyes Douglas took a vested interest in the income which had accumulated prior to his reaching the age of twenty-one years.

The will provides that the original fund "and all accumulations thereof" should be paid to him on his reaching the age of twenty-five years; but if he should die before reaching that age, without issue, then "said fund" should go into the testator's residuary estate.

To my mind the will binds the accumulations during the grandson's minority with the principal, by the use of the words, "this fund and all accumulations thereof," thus making a new fund, referred to in the will as "said fund," which was to be held by the trustees until the grandson reached the age of twenty-five years.   On the fund so constituted he was to receive the full income.   If he reached the age of twenty-five years it was to be his; if he did not, it was to go to his issue, if any, or to the residuary legatees.   I see no room for the construction that there was a vested interest with simply postponement in the time of payment, because unless Samuel Noyes Douglas lived to the age of twenty-five he was not to take at all, and his issue, if any, were not to take through him, but under the will.   It was, therefore, a contingent interest, since it was uncertain whether Samuel Noyes Douglas would be entitled to the fund.

The case seems to be one like *Watson* v. *Woods*, 3 R. I. 226; *Bailey* v. *Hoppin*, 12 R. I. 560; *R. I. Hospital Trust Co.* v. *Harris*, 20 R. I. 408; and *Melcher, Petitioner*, 24 R. I. 575.

It is not disputed that the rule of these cases applies to the original fund, and if, as I think, the will adds the accumulations to it as a new fund, it must apply to the accumulations of income during the period of the grandson's minority as well.

*Tillinghast & Carr*, for complainant.

*Edwards & Angell and Frederic A. Greene*, for respondent S. T. Douglas, Exr.

*Clarence A. Aldrich,* for respondents Gertrude B. Bolles and Henry J. Spooner et al.

*Edward C. Stiness and Arthur M. Allen,* for respondents Isaac P. Noyes, Sarah B. Daniels, John W. Noyes, and Mary J. Noyes.