FANNIE DUNBAR et al., Appellants, v. CHARLES T. SIMS et al.

Division Two, June 25, 1920.

1. **WILL: Power to Sell: Vested Remainder.** A will by which testator devised all his real estate to his wife for and during her natural life and at her death "to go and vest absolutely" in his children equally, with power and authority in his wife "to sell and convey any or all of said real estate as she may see fit and proper," created a vested equitable estate in remainder in his children, subject to the life estate. and power of disposition given to the wife, and gave to the children power, prior to the widow's death, to sell and convey their aliquot parts.

2. ———: ———: ———: **Right to Possession.** A will which gave to testator's wife his real estate for life and then provided that "at her death, I will and devise that all my real estate shall go and vest absolutely in fee in my seven children . . . equally, share and share alike," did not show a definite intention that the title was not to vest in the children until the death of the wife, but said words relate to the time when the children should have possession, and have nothing to do with the vesting of the title, which became effective upon testator's death.

3. ———: ———: ———: **Conveyance By Children: Partition.** Where the remaindermen took a vested equitable remainder in the estate and after the death of testator and before the death of the life tenant conveyed their interest therein, they have no further claim upon the property, and are not entitled to share in its partition.

Appeal from Ralls Circuit Court.—*Hon. W. T. Ragland, Judge.*

AFFIRMED.

*Mahan, Smith & Mahan* and *M. L. Farres* for appellants.

(1) The will, as clearly expressed on the face thereof, shows a definite intention by the testator that the title was not to be vested in the children until the death of the executrix, for he says: "And at her death I will and devise, that all my real estate shall go and vest absolutely in fee in my seven children equally, share and share alike." Buxton v. Kroeger, 219 Mo. 224; St. Louis B. L. Assn. v. Fuller, 182 Mo. 93; Hardy v. Clarkson, 87 Mo. 171; Tesson v. Newman, 62 Mo. 198; Taylor v.

Adams, 93 Mo. App. 277; Emmerson v. Hughes, 110 Mo. 627. (2) Silas E. Sims, by his will, did not intend that the title to the real estate, should vest prior to the time when it would be known that the executrix who had power to sell, had not sold the land, for until her death it could not be known who would have the land, whether the children, and which ones, or some other person, to whom the executrix might convey the land. Hardy v. Clarkson, 87 Mo. 171; Taylor v. Adams, 93 Mo. App. 277; Preston v. Brant, 96 Mo. 552, 15 Am. St. 128; Marard v. Pavey, 128 Ill., 430, 15 Am. St. 120.; Olney v. Hull, 21 Pick. 311; Thomas v. Luddington, 104 Mass. 193; 13 Cyc. 647; Warne v. Vorge, 258 Mo. 162. (3) There was no present capacity to convey an absolute title to the remainder in the children any time prior to the death of Mary E. Sims, the executrix, and none of them question that her deed to the Atlas Portland Cement Company carried the title. She alone had "the present capacity to convey an absolute title to the remainder." Tiedeman on Real Propery, sec. 397, and note; Buxton v. Kroeger, 219 Mo. 224; Buxton v. Kunn, 219 Mo. 278. (4) A conveyance of an undivided fractional part is quite a different thing from "all right, title and interest." None of the parties plaintiff undertook to convey any particular undivided portion, or any funds arising from a sale of the lands. Johnson v. Johnson, 170 Mo. 34; Llewellyn v. Llewellyn, 122 Mo. App. 467; Llewellyn v. Lewis, 163 S. W. 545. (5) The deeds under which defendants claim the funds of the sale to the Atlas Portland Cement Company, of the parts of plaintiffs, gave them no right thereto. There were no attempted assignments of any real estate converted into personalty, or of any distributive share of the plaintiffs in the estate of their father. Llewellyn v. Llewellyn, 122 Mo. App. 467; Johnson v. Johnson, 170 Mo. 34; Llewellyn v. Lewis, 163 S. W. 545. (6) By the words of the grant, "all the right, title and interest," the conveyance was only coextensive with the grant, and was not a conveyance of a one-seventh, or any particular part, or in-

terest, and not a warranty, as to any further assuran:es. Butcher v. Circle, 60 Mo. 140; Gibson v. Chouteau's Heirs, 39 Mo. 536; Bogy v. Schaub, 13 Mo. 365; Pell v. Jackson, 11 Wend. 110; Bradford v. Wolfe, 103 Mo. 397; Wilson v. Fisher, 172 Mo. 21.

*J. O. Allison* and *T. E. Allison* for respondents.

(1) The will clearly creates a life estate in his widow, with power of sale, and vested the remainder in fee to his seven children named in the will. Waddell v. Waddell, 99 Mo. 338; Jones v. Waters, 17 Mo. 587; Aubuchon v. Bender, 44 Mo. 566; Byrne v. France, 131 Mo. 639; Jefferson v. Tendall, 167 Mo. 218; Roberts v. Crune, 173 Mo. 572; Gannon v. Albright, 183 Mo. 238; Edgar v. Emerson, 235 Mo. 552; Gates v. Silbert, 157 Mo. 254; Warne v. Gorge, 258 Mo. 162; Chew v. Kellar, 100 Mo. 362. The chief case relied on by appellants is the case of Buxton v. Kroeger, 219 Mo. 224. In that case the title did not vest in the children until ten years after the youngest of them should become of age, and then only in such of them as were then living. In the case at bar there can be no uncertainty as to the persons who are to take in remainder, because the testator specifically named them. (2) Vested or contingent remainders are determined not by the uncertainty of enjoying the remainder, but by the uncertainty of the vesting of the estate; the uncertainty of the persons who are to take in remainder. Rodney v. Landon, 104 Mo. 257; Emmerson v. Hughes, 110 Mo. 630; Cross v. Hock, 149 Mo. 332; Shoer v. Carter, 120 Mo. 409; Harbison v. James, 90 Mo. 411; Chew v. Keller, 100 Mo. 362. Where words of futurity are used in creating a remainder, they will be held to refer to the time of enjoyment, rather than to the time of vesting the title. Tindall v. Tindall, 167 Mo. 226; Chew v. Kellar, 100 Mo. 368. (3) The power of sale will not convert a life estate into a fee. Roth v. Rauschenbusch, 173 Mo. 582; Romjue v. Randolph, 166 Mo. App. 87. (4) However, if it were true, which is the contention of the appellants, that the will created a con-

tingent remainder in the children, even then their inter-
ests were alienable by quitclaim deeds. Lackland v. Nev-
ins, 3 Mo. App. 335; Goldman v. Simmonds, 113 Mo. 122;
White v. McPheeters, 75 Mo. 286; Brown v. Fulkerson,
125 Mo. 400; R. S. 1909, sec. 2787. The deeds of the
plaintiffs, even if construed as quitclaim deeds, being for
valuable consideration, as expressed in the deeds, con-
veyed their interests in the land to the grantees therein.
In White v. McPheeters, supra, it was held that a con-
tingent remainder would pass by execution sale. It
would certainly pass by quitclaim deed.

RAILEY C.—This action was brought in the Cir-
cuit Court of Ralls County, Missouri, for the partition
of the real estate described in petition; and for an ac-
counting of the rents, profits and money alleged to have
been received by defendants.

Silas E. Sims died in Ralls County, in 1907, the
owner of above mentioned real estate, leaving a will.
He left surviving him his widow, Mary E. Sims, and
his children, Charles T. Sims, Enoch Sims, Luther Sims,
George Edward Sims, Lee Roy Sims, Arch Sims, and
Fannie Dunbar. Fannie Dunbar, Lee Roy Sims and
George Edward Sims, are plaintiffs herein, and Charles
T. Sims, Enoch Sims, Luther Sims and Arch Sims are
defendants.

On March 25, 1909, plaintiff George E. Sims, and
wife, executed and delivered to defendant Archie Sims,
their warranty deed for the expressed consideration of
$800, conveying all their right, title and interest in and
to the real estate described in petition.

On February 10, 1909, plaintiff Lee Roy Sims, and
wife, executed and delivered to defendant Charles T.
Sims, their quitclaim deed, for the expressed consider-
ation of $625, conveying all their right, title and interest
in said land.

On October 18, 1909, plaintiff Fannie Dunbar execu-
ted and delivered her warranty deed to defendant,
Archie Sims, for the expressed consideration of $1,500,

conveying to him all of her right, title and interest in said land.

Afterwards, on July 2, 1910, said Mary E. Sims, under the power vested in her by the will of her husband, sold, by deed duly executed, a right of way fifty feet wide across said land for $3,500, to the Atlas Portland Cement Company, a corporation. It appears from the evidence, that neither of the plaintiffs herein received any part of said $3,500.

The widow, Mary E. Sims, died April 24, 1917.

The will of Silas E. Sims, was executed on the — day of February, 1907. It was offered in evidence, and contains five separate paragraphs. Number 1 provides for the payment of his debts, etc.; paragraph 2 gave to the widow, absolutely, all of his personal property, subject to the payment of his debts; paragraph 4 named his wife, Mary E. Sims, as executrix, with the direction and request, that she be not required to give bond. The third and fifth paragraphs, read as follows:

"Item Third: I will and devise all of my real estate to my wife, Mary E. Sims, for and during her natural life, and at her death, I will and devise that all my real estate shall go and vest absolutely in fee, in my seven children, namely, Charles T. Sims, Enoch Sims, George Edward Sims, Luther Sims, Lee Roy Sims, Arch Sims, and Fannie Dunbar, equally share and share alike.

"Item Fifth: I will and direct that my said executrix, Mary E. Sims, shall have power, and I hereby give her power and authority to sell and convey any or all of my real estate as she may see fit and proper, and make good and perfect title to the same in fee simple to the purchaser and to make distribution of the proceeds of such sale among my said children and herself," etc.

The deeds heretofore mentioned, from plaintiffs to Archie Sims, and Charles T. Sims, were duly recorded in Ralls County, Missouri.

On March 5, 1918, the trial court found the issues in favor of defendants, and entered its decree accordingly. Plaintiffs, in due time, filed motions for a new trial,

and in arrest of judgment. Both motions were over-ruled, and the cause was duly appealed by them to this court.

I. There is practically no dispute over the facts in this case, as heretofore set out. It is contended by appellants that the children of testator acquired no vested interest as remaindermen in the real estate aforesaid,

**Vested Remainder.** prior to the death of the widow, Mary E. Sims, on April 24, 1917; and that, by reason thereof, the plaintiffs had no interest in their father's estate, which was the subject of conveyance, at the time they executed their respective deeds to Archie and Charles T. Sims. This contention does not appeal to us as being sound. On the contrary, we are decidedly of the opinion, that upon the death of testator, in 1907, his widow, Mary E. Sims, by virtue of paragraphs three and five of the will aforesaid, became vested with a life estate, in the real estate in controversy, with full power of disposition during her life; and that upon the death of testator in 1907, his seven children heretofore named, became vested with an equitable estate in remainder, subject to the life estate and power of disposition given to the widow aforesaid. [Huntington Real Estate Co. v. Megaree, 217 S. W. 301; Trigg v. Trigg, 192 S. W. 1. c. 1014 and cases cited; Schneider v. Kloepple, 270 Mo. 389, 390; Priest v. McFarland, 262 Mo. 229; Tallent v. Fitzpatrick and Kaiser, 253 Mo. 1. c. 13, 15, 161 S. W. 689; Burnet v. Burnet, 244 Mo. 491, 505-6-7, 148 S. W. 872; Gibson v. Gibson, 239 Mo. 490, 144 S. W. 770; Edgar v. Huff, 235 Mo. 552, 560-1-2; Grace v. Perry, 197 Mo. 1. c. 562, 95 S. W. 878.]

In the absence of any provision in the will calling for a different construction, the foregoing authorities are conclusive against appellants, as to the merits of this controversy.

II. It is insisted, however, by appellants, that the will, as clearly expressed on its face, shows a definite intention by the testator, that the title was not to be

vested in the children until the death of the executrix,
for he says: "And at her death I will and de-
vise that all my real estate shall go and vest
absolutely in fee, in my seven children,
. . . equally, share and share alike."

**Right of Possession.**

Such expressions as are found in the above quota-
tion have frequently come before the courts for con-
sideration, and have uniformly been construed, when
considered in the light of foregoing facts, to relate to the
times, when the devisees shall have possession, and have
nothing to do with the vesting of the estate. [Jones v.
Waters, 17 Mo. 587; Collier's Will, 40 Mo. 288; Chew v.
Keller, 100 Mo. 1. c. 368; Byrne v. France, 131 Mo. 639,
646-7; Tindall v. Tindall, 167 Mo. 218, 226; Heady v.
Hollman, 251 Mo. 632, 638; Henderson v. Calhoun, 183
S. W. (Mo.) 584; Huntington Real Estate Co. v. Megaree,
217 S. W. (Mo.) 1. c. 304; 2 Underhill on The Law of
Wills, sec. 861; 2 Jarman on Wills (6 Ed.), p. 1357; An-
derson v. Menefee, 174 S. W. (Tex. Civ. App.) 1. c. 908;
Rhode Island Hospital Trust Co. v. Noyes, 26 R. I. 334,
58 Atl. 999.]

A single quotation is sufficient to indicate the trend
of judicial opinion, in respect to this matter. In Chew v.
Keller, 100 Mo. 1. c. 368, BLACK, J., said: "The law
favors vested estates, and, where there is a doubt as to
whether the remainder is vested or contingent, the
courts will construe it as a vested estate. . . . The ex-
pressions that they, Levin Baker and others, are not
to take possession of the property devised 'until the
death of Jemima Lindell,' and that 'upon her death'
the devisees shall take the parts as tenants in common,
all relate to the times when the devisees shall have pos-
session, and have nothing to do with the vesting of the
estate."

Aside from the other authorities cited, the conclus-
ion reached by this court in the recent case of Hunting-
ton Real Estate Co. v. Megaree, 217 S. W. 1. c. 304-5,
settles the above controversy adversely to appellants.
Testator, having given to his wife a life estate in said

land, which carried with it the right of possession during her life, and having also given her the right to sell and convey said property, if she saw fit to do so, why should the title not vest, upon the death of testator, in his children, subject to the widow's life estate, and right of disposition under the terms of the will? As the remaindermen could not interfere with the widow's rights thereunder, we discover nothing upon the face of said instrument, which discloses any reason for testator withholding the title of the remaindermen, under the circumstances aforesaid, until the death of testatrix, rather than have the same become effective, at his own death.

In our opinion, the foregoing contention of appellants, is supported by neither reason nor authority.

III. Having heretofore reached the conclusion, that upon the death of testator in 1907, George E. Sims, Lee Roy Sims and Fannie Dunbar, each became vested with the equitable title, as remaindermen, to the undivided one-seventh of the real estate owned by testa- Conveyance. tor at that time, subject to the life estate and power of disposition given the widow, it necessarily follows, that the deeds from appellants to their brothers heretofore mentioned, conveyed to the grantees therein named all the respective interests which said grantors owned in the real estate aforesaid, and that by reason of the foregoing they have no valid claim or title to the property in controversy. [Oldaker v. Spiking, 210 S. W. (Mo.) 62-3.]

The judgment of the trial court in favor of respondents, is accordingly affirmed.

*White* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion of Railey, C., is hereby adopted as the opinion of the court. All of the judges concur.