No. 20,856.

CHARSTO STROM et al., *Appellants*, v. R. A. WOOD, as Sheriff of Morris County, and W. L. RUDE, *Appellees*.

SYLLABUS BY THE COURT.

1. WILL—*Devise—Title Vests in Remaindermen.* A will gave certain property to the widow of the testator "so long as she shall live or retain her capacity for such business; or shall not become remarried; and when either of such contingencies shall happen, then I direct that all of said property, both real and personal shall at once be distributed among my children and heirs at law, the issue of myself and by said wife, and my said wife, Charsto Strom, as the laws of Descent and Distribution of the State of Kansas provide and direct."

   *Held,* that such will vested in the widow a life estate to be enlarged to a one-half interest in fee by remarriage or disability, and vested in the children the remainder in all, subject to being diminished to a vested remainder in one-half by the disability or remarriage of their mother.

2. WILL—*Devisee's Acceptance—Presumptions.* A devisee is presumed to accept a devise favorable to him, and if he desire to renounce he should do so within a reasonable time.

3. SAME—*Timely Renunciation.* A timely renunciation relates back to the death of the testator.

4. WILL—*Devise — Judgment Against Devisee — Judgment Lien — Presumptions of Acceptance of Devise.* A judgment was recovered in Morris county against the devisee, April 7, 1910. The testator died, and his will giving the devisee an interest in certain land in the same county was probated May 16, 1911. Executions on the judgment were issued January 6, 1915, and later, March 13, 1916, levy was made on the devisee's interest in the land. April 25, 1916, the sheriff began to advertise a sale, to enjoin which this suit was begun. April 24, 1916, the devisee filed a disclaimer. *Held,* that the judgment had already been for years a lien on his interest which by lapse of time and nonaction he is presumed to have accepted.

5. SAME—*No Final Settlement of Estate—Judgment—Against Devisee—Lien Attaches.* The amended petition alleged that the estate had not reached final settlement, but averred that the executrix had been appointed more than five years. There was no allegation of unpaid claims. *Held,* that it will not be presumed that the sale of land was necessary for the payment of debts.

Appeal from Morris district court; ROSWELL L. KING, judge. Opinion filed May 12, 1917. Affirmed.

*Edwin Anderson,* of Council Grove, and *Frans E. Lindquist,* of Kansas City, Mo., for the appellants.

*M. B. Nicholson,* and *W. J. Pirtle,* both of Council Grove, for the appellees.

The opinion of the court was delivered by

WEST, J.: The amended petition alleged in substance that Oscar Strom, in 1896, willed certain property, giving a life estate to his widow so long as she remained such and capable of looking after the property, and in case she should remarry or become disqualified, the property to be distributed according to the law of descents and distributions. May 2, 1911, the testator died, leaving his widow and four children, including H. C. Strom. Two weeks later the will was probated and the widow filed her election to take thereunder. January 6, 1915, execution was issued on a judgment recovered April 7, 1910, by Anna Jenner against H. C. Strom, in Morris county, where the land is situated. February 8, 1916, a second execution was issued, and March 13, 1916, levy was made on H. C. Strom's interest in the land, "being the undivided one-fourth interest." April 25, 1916, the execution was returned unsatisfied and a new execution issued, and the sheriff, without a new appraisement, began to advertise a sale which is sought to be halted by this suit. April 24, 1916, H. C. Strom filed in the office of probate judge a formal disclaimer, stating that he "does hereby decline to accept any interest in and to" the real estate involved. This was acknowledged before a notary public. The trial court sustained a demurrer to the amended petition, and the plaintiffs appeal. Their contention is that the devisee had a legal right to disclaim or refuse to accept the devise so far as his one-eighth interest in the land is concerned,

and that the other eighth interest is contingent upon the widow remarrying or becoming unable to conduct the farm, and is vested in her subject only to be divested by the happening of one of the contingencies named in the will. It is also argued that H. C. Strom's one-eighth interest is contingent, but under the rule announced in *Bunting v. Speek*, 41 Kan. 424, 21 Pac. 288, and in *McLaughlin v. Penney*, 65 Kan. 523, 70 Pac. 341, this interest is vested.

It is suggested that the disclaimer was filed before the execution under which the sale sought to be made was issued. The first execution, however, was issued several months before. ·

The defendants present the theory that ordinarily a devise of property is presumed to be beneficial and its acceptance is also presumed; that the devise in this case vesting in H. C. Strom an interest in real estate, such interest by virtue of the statute (Gen. Stat. 1915, § 7320) became a lien thereon from the first day of the term at which the judgment was rendered.

The will gave the widow a life estate subject to enlargement to a one-half interest in fee by remarriage or disability, and left to the children a vested remainder in all, subject to being diminished to a vested remainder in one-half only by the remarriage or disability of their mother.

The defendants cite authorities to sustain their theory that the devisee had a right to renounce, and that such renunciation related back to the date of the testator's death. Besides numerous textbooks, we have examined many decisions, and the general rule derived from all is well stated in 40 Cyc. 1898 as follows:

"As already shown, a beneficiary under a will is not bound to accept a legacy or devise therein provided for, but may disclaim or renounce his right under the will. However, in order to be effective, the disclaimer or renunciation must be express, clear, and unequivocal, and with knowledge of the existence of the will, so as to prevent all future cavil, and operate as a quasi-estoppel. It may be by matter of record or by deed, and it has been held that a disclaimer or renunciation by parol is insufficient; but the decided weight of authority is that unequivocal acts on the part of the devisee may amount to a sufficient renunciation. Where a beneficiary disclaims or renounces his interest under the will, it becomes inoperative as to him. He takes nothing by it; and on the other hand is thereby released from all obligations which an acceptance would have imposed on him."

In *Stebbins v. Lathrop*, 21 Mass. (4 Pick.) 33, the supreme judicial court of Massachusetts said:

"Until the legatees shall actually renounce their legacies, their assent to the provisions of the will, which are apparently beneficial to them, will be presumed."   (p. 43.)

It was said in *Farnum v. Bryant*, 34 N. H. 9:

"This right it was competent for them to renounce or waive. It was no greater or more indefeasible than the right of a devisee or legatee to the devise or legacy given to him under a will; and it is well settled that such devise or legacy may be waived or renounced by some unequivocal act."   (p. 19.)

In *Albany Hospital v. Albany Guardian Society*, 214 N. Y. 435, in a most informing opinion going back to the early decisions it was held:

"A devise of real estate is an offer to the proposed beneficiary, and while the presumption is that he will accept it when he has an opportunity, there is no presumption of immediate acceptance; if acceptance does occur, the title will relate back to the time of the devise at least in the absence of intervening rights; if refusal results the devise will never take effect and title never vest."   (Syl. ¶ 2.)

The supreme court of Iowa in *Mohn v. Mohn*, 148 Iowa, 288, laid down the rule that:

"While assent of a devisee to an apparently beneficial devise will be presumed he may withhold such assent and renounce the provision made for him, and in such case no interest passes to him. A beneficiary is presumed, however, to assent to the provisions made on his behalf, especially where they are beneficial in character."   (p. 300.)   (*In re Estate of Stone*, 132 Iowa, 136, 140.)

In *Bradford v. Leake*, 124 Tenn. 312, it was held:

"A beneficial devise is always presumed to be accepted, and, in the absence of anything to the contrary, the gift begins at the moment of testator's death; but such a devise may be renounced, and where the renunciation is made, it relates to the moment of the gift, and prevents its ever taking effect."   (Syl. ¶ 2.)

In *Bradford v. Calhoun*, 120 Tenn. 53, the facts were in some respects similar to those before us. Mrs. Sneed died January 13, 1906, leaving a will giving to her husband, Thomas H. Sneed, a life estate in certain land, with the remainder to her sister and a niece. The will was admitted to probate four days later, on which date the husband executed a formal disclaimer duly acknowledged and registed. Prior to the death of Mrs.

Sneed suit had been brought against the husband, and on January 27, ten days after the probate and renunciation, a judgment was recovered against him. Execution was issued on February 3, 1916, and levied on the estate devised to him. The remaindermen and surviving heirs sued to enjoin the sale of the property. The civil court of appeals held that the renunciation had to be by deed of record, but the supreme court reversed this ruling and held the renunciation made by Sneed sufficient. The true rule, founded upon principle, was said to be that:

"It is optional with a devisee to accept the devise, however beneficial it may be to him, and when he elects to renounce before any act on his part indicating an acceptance, the renunciation will relate back, and will be held to have been made at the time of the gift, and will displace any levy of creditors that may in the meantime have been made." (Syl. ¶ 1.)

It was further held that the motive in making the renunciation was nothing the creditors could complain of so long as there was no collusion with the remaindermen or residuary devisees for which he apparently received a benefit for his renunciation, of which there was no proof.

"The renunciation is not a voluntary conveyance, void as against existing creditors, because, when he has properly renounced, the renunciation relates back to the date of the gift, and, as he has never accepted the gift, he has had nothing that could be made the subject of a voluntary conveyance." (p. 60.)

In *Welch v. Sackett et al.*, 12 Wis. 243, in discussing the effect of certain mortgages made in ignorance of the mortgagee, the court, through Chief Justice Dixon, discussed at considerable length a certain English authority holding that title to property could pass into a party without his knowledge or consent and out of him without any motion or act of his signifying his willingness, a discussion most entertaining and admirable. Small patience was shown with the notion that assent, which is an act of the mind, can be presumed in case of one who has no knowledge by means of which he can in fact exercise his choice, the learned chief justice remarking that it is an impossibility "that a person has consented to do that of which he knows nothing." (p. 259.)

The settled doctrine, however, is that a devisee is presumed to accept a devise favorable to him. This comports with common sense and is consistent with what we know of human

nature. A gift or devise by which one's estate is materially increased naturally carries a material benefit, and it is not human nature to refuse or reject such visitations of the fickle goddess of fortune, and the law does not require such an absurd result to be inferred or presumed. This being the sensible and practical presumption, it would naturally be expected that if the devisee should desire to renounce he would do so at least within a reasonable time. Here he waited more than six years, and did not move until repeated executions had been issued, and until proceedings for an actual sale by the sheriff had begun. In the Tennessee case the judgment was not obtained until ten days after the renunciation was executed, acknowledged and registered. In that state the judgment becomes a lien for twelve months from the date it was entered and does not relate back to the first day of the term as here. Section 7320 of the General Statutes of 1915 makes judgments a lien on the real estate of the debtor. By virtue of section 10973, subdivision 8, "real estate" includes lands and all rights thereto and interest therein equitable as well as legal. (*Kiser v. Sawyer*, 4 Kan. 503; *Kirkwood v. Koester*, 11 Kan. 471; *Ashton v. Ingle*, 20 Kan. 670.)

In *Bank v. Murray*, 86 Kan. 766, 121 Pac. 1117, it was held that real estate devised to several persons, followed by direction that it be sold and the proceeds divided equally among them, was subject to the lien of a judgment against one of the devisees existing at the time of the testator's death. This was approved in *Ward v. Benner*, 89 Kan. 369, 372, 131 Pac. 609, and followed in *Smith v. Hensen*, 89 Kan. 792, 132 Pac. 997.

The devise being beneficial, the presumption of acceptance having existed for more than six years, the interest being the present vested estate belonging to the debtor, it could not be maintained had he died during this time without renouncing or disclaiming, that this estate did not descend and pass like other property owned by him. It therefore follows that it was and is subject to the lien of the judgment on which the executions were issued.

It was alleged that the administration of the estate of the testator had not reached final settlement. But it was also alleged that the executrix was appointed May 16, 1911, which

would be five years and six days before the petition was filed, and there was no allegation of any unpaid claims, and it can not be presumed that the estate which had been in probate court more than five years was in a condition requiring the sale of land to pay any debts not mentioned by the pleadings.

The interest sold should be described as the interest of H. C. Strom under the will of Oscar Strom. Assuming that this will be corrected, the judgment sustaining the demurrer to the amended petition is sustained.