RICHARD LEE SANDERS, by ELY A. SANDERS, his natural guardian, v. A. E. JONES ET AL. (six others), formerly Directors of and Trustees for the COMMERCIAL BANK OF SHELBINA, a Corporation, Appellants.—147 S. W. (2d) 424.

Division Two, February 1, 1941.

*Lane B. Henderson* and *W. W. Barnes* for appellants.

*Thos. J. Tydings* for respondent.

COOLEY, C.—This is an action to determine title to 160 acres of land in Monroe County, Missouri. The circuit court decreed plaintiff to be the sole owner in fee and defendants to have no interest or right. Defendants appealed.

On May —, 1933, George L. Sanders died testate, seized in fee of the land, leaving a widow, Minnie Sanders, and a son, his only child, Ely A. Sanders. On May 22nd, 1933, the will of George L. Sanders was duly probated. Plaintiff, Richard Lee Sanders, is the minor son and only child of Ely A. Sanders. Defendants constituted the last board of directors of the Commercial Bank of Shelbina, whose charter expired, and are now acting as trustees for creditors, stockholders and all persons interested in the bank. No point is made as to their authority so to act.

By the first paragraph of his will George L. Sanders revoked all former wills. By the second paragraph he gave his son, Ely, $100. The third and fourth paragraphs read:

"Third. All the residue and remainder of my estate, real and personal, I give, devise and bequeath to my beloved wife, Minnie Sanders, for and during her natural life or widowhood.

"Fourth. Upon the death or remarriage of my said wife, Minnie Sanders, said residue and remainder of my estate, whether real or personal, I give, devise and bequeath to my said son, Ely A. Sanders, or his heirs at law, in fee simple absolute."

The fifth and last paragraph names his wife as executrix.

On September 16th, 1920, Ely A. Sanders, then a resident of Missouri, executed and delivered to the Commercial Bank two demand notes (amount not shown). No payments were ever made on those notes.

These defendants, in their capacity as trustees, instituted an attachment suit on those notes and on December 14th, 1936, a writ of attachment was issued and levied on the land here involved as the property of Ely A. Sanders, and an abstract thereof filed in the recorder's office. No point is made as to the regularity of the attachment proceedings. The only interest defendants claim in the land in question is by virtue of the levy of the attachment writ. In the petition filed by them (as plaintiffs) in the attachment suit they alleged, to avoid the bar of the Statute of Limitations that in October, 1920, after demand of payment of the notes above mentioned had been made, Ely A. Sanders left Missouri and became a non-resident of the State. For the purpose of this case it was admitted that the allegation of non-residence was true.

On August 23rd, 1934, Ely A. Sanders executed and acknowledged a written renunciation of the provision made for him in his father's will, which was recorded August 27th, 1934, in the recorder's office of Monroe County. Omitting caption, signature and acknowledgment it reads:

''In the matter of the will of)
  George L. Sanders, Deceased.)

''I, Ely A. Sanders, a son and sole and only heir at law and the only living child of George L. Sanders, late of Monroe County, Missouri, Deceased, do by this act and deed renounce and do refuse to accept any provisions made for me by the last will and testament of said George L. Sanders proved in the Probate Court of said Monroe County, Missouri, wherein he devised to me or my heir-at-law all the estate of which the said George L. Sanders died seized, subject to the life estate of his wife, Minnie Sanders, or during her widowhood; which estate consists of some personal property and the following described real estate, to-wit: The Northeast Quarter of Section Twenty-Eight, Township Fifty-Six of Range Eleven, West, lying, being and situate in Monroe County, Missouri. And I shall and do insist upon my right to refuse to accept any provisions made in said Last Will and Testament and I renounce and disclaim any provisions made in said will.

''WITNESS my hand and seal this 23rd day of August, 1934.''

The widow, Minnie Sanders, died on ''the — day of ———, 1936'.' prior to the levy of the attachment. Thereafter and after the levy of the attachment, to-wit, on January 14th, 1937, Ely A. Sanders executed a second ''renunciation,'' identical with the first except for this added paragraph:

"And I, the said Ely A. Sanders, do further renounce, disclaim and refuse to accept any and all of said estate of said George L. Sanders, deceased, whether real or personal, which has descended or may descend to me, or which has been or may be inherited by me from said George L. Sanders, under any statutes of descent and distribution of the State of Missouri."

The case was submitted on an agreed statement of facts, in which this occurs:

"That said Ely A. Sanders, since the death of his mother, Minnie Sanders, has exercised no right of ownership over or to said land, nor done or committed any act indicating that he claimed to own said land or any part thereof."

Nothing appears as to his conduct in relation to the land prior to his mother's death nor as to whether or not he accepted the $100 bequest.

We shall first dispose of a contention advanced by respondent arising upon the pleadings. Respondent, in his petition, pleaded the relationship of the Sanderses, the will of George L., the death of Minnie, the two renunciations of Ely A., and alleged that by reason of such facts he is sole owner of the land. He then alleged that defendants claimed "some right, title or interest" by virtue of the issuance and levy of the attachment against Ely A. Sanders, which attachment proceeding is sufficiently described, and prayed the court to determine and define the title and interests of plaintiff and defendants, to quash the levy of the attachment and for general relief. The answer was a general denial.

Respondent, in his brief, says that defendants' general denial to the petition, which alleged plaintiff's ownership and also defendants' claim, not only denied plaintiff's ownership but also denied that they, defendants, have or claim any interest hostile to plaintiff, and precludes them from attacking the judgment in plaintiff's favor; citing Gilchrist v. Bryant, 213 Mo. 442, 111 S. W. 1128, and Rohlf v. Hayes, 287 Mo. 340, 229 S. W. 747. Those cases apparently so hold, especially the latter, in which the trial court had overruled a demurrer to the plaintiff's evidence and the defendants stood upon their demurrer, whereupon the court entered judgment for the plaintiff and the defendants appealed. This court said that with the general denial of record, denying, as the court said, any interest in themselves, the defendants "passed out of the case below, and here," as parties interested in the litigation.

In the instant case we think there are distinguishing features that render the above cited cases not applicable. This case was, by agreement of the parties, submitted to the court solely upon an agreed statement of facts. In that statement the facts relative to the issuance and levy of the attachment were set forth and that "The only claim which defendants have, if any, to said real estate is based upon and

arises out of said attachment and the levy . . . as hereinbefore set forth.'' That amounted to an agreement that defendants *were* asserting a claim by virtue of the attachment. Obviously it did not occur to anyone at the trial that the real issues to be tried were not properly joined. If, under their answer, the defendants ''passed out of the case'' or confessed the plaintiff's cause of action so far as they were concerned, why was not plaintiff entitled to judgment on the pleadings? He made no motion or request for such judgment but went to trial and submitted his case as though the issues to be tried were properly joined, recognizing *and agreeing* that defendants were still asserting their claim by virtue of the attachment. The case was tried throughout on the theory that the issues which the parties sought to litigate—and did litigate—were before the court. It seems to us that in these circumstances it would be a harsh and unjust holding for this court to say now that defendants are precluded from a hearing on the merits by reason of the answer filed below. This point is ruled against respondent.

██ The parties differ as to the effect of the use of the word ''or'' in the fourth paragraph of the will devising and bequeathing the remainder to the son Ely ''or to his heirs at law.'' Appellants contend that by such use of ''or'' the testator intended to designate a substitutional devisee or devisees to take in case the first named devisee, Ely, should predecease the testator and that as Ely outlived the testator he took a vested estate upon the taking effect of the will, subject to life estate of the widow, his possession and enjoyment only being postponed till the widow's death or remarriage. On the question of the effect of the word ''or'' so used they cite several cases from other jurisdictions holding that such word does have the effect claimed when the primary devisee or legatee predeceases the testator. Illustrative, consult O'Rourke v. Beard, 151 Mass. 9, 23 N. E. 576; Strout v. Chesley, 125 Me. 171, 132 Atl. 211. The cases cited on this point do not decide what would have been the effect had the primary devisee or legatee survived the testator and cannot be of much aid in the case before us.

Respondent contends that by the terms of the will the estate in remainder given to Ely A. Sanders or his heirs at law was not to vest until the death or remarriage of the widow, being contingent until such time; that whether vested or contingent, when Ely A. Sanders renounced the devise the renunciation related back to testator's death, the will never took effect as to Ely A. Sanders and that respondent took as substitutional devisee. It is also contended by respondent that ''heirs at law'' should, in the circumstances of this case, be construed to mean child or children.

We think that by the terms of the will (absent the question of renunciation, to be considered later), Ely A. Sanders took a vested estate in remainder upon his father's death. ''The law favors vested

estates, and, where there is a doubt as to whether the remainder is vested or contingent, the courts will construe it as a vested estate. [Collier's Will, 40 Mo. 287.] Adverbs of time, as *'when,' 'there,' 'after,'* (thereafter?) *'from'* and like expressions, do not make a contingency, but merely denote the commencement of the enjoyment of the estate.'' [Chew v. Keller, 100 Mo. 362, 368, 13 S. W. 395.]

In Tindall v. Tindall, 167 Mo. 218, 225, 66 S. W. 1092, it is said: ''The law favors vested estates, and the rule is that estates shall be held to vest at the earliest possible period unless a contrary intention is clearly manifested in the grant.''

See also, Garrett v. Damron (Mo.), 110 S. W. (2d) 1112, passing upon a will by which the testator devised his real estate to his wife for life and provided that ''at the death'' of his said wife it should ''revert'' to his children (naming them), ''or to the lawful heirs of each.'' The children were living at the death of testator. The child whose interest was in controversy died subsequent to the death of the testator and prior to that of the life tenant. It was held she took a vested interest in fee, subject to the life estate, at the testator's death.

*Of renunciation.*

█ A legatee or devisee may accept or decline a testamentary gift. ''When a devise is renounced the renunciation will relate back to the moment when the gift was made and prevent it from ever taking effect, leaving the devisee without an interest in the property and without liability in connection therewith.'' [28 R. C. L., p. 352, sec. 351.]

In 69 C. J., p. 974, sec. 2168, it is said that a beneficiary may renounce his right, under the will even though the gift is beneficial to him, provided he has not already accepted it, and, ibid, Section 2169, that when the beneficiary renounces his interest under the will it becomes inoperative as to him and the renunciation is considered as relating back to the time of testator's death or the time when the will became effective. Respondent cites a considerable number of cases from other jurisdictions which support the rule as stated in Ruling Case Law and Corpus Juris. It seems to be in accord with the weight of authority.

However, there is another rule that seems to be equally well established, viz., that when the gift is beneficial to the donee acceptance by him is presumed, though the presumption is rebuttable. In 69 C. J., p. 969, sec. 2161, we read:

''There is no presumption that a donee has accepted a gift which is not beneficial but is saddled with onerous exactions. Conversely the acceptance of a devise or bequest will be presumed when such gift is beneficial. This presumption of assent, however, is not conclusive, but may be overcome by the timely renunciation or disclaimer of the beneficiary, or by showing that the donee has had no opportunity to elect. Moreover, while there is no presumption of an immediate

acceptance, yet, where the donee has had an opportunity to reject a gift but has failed to do so within a reasonable time, the presumption of acceptance has been said to become conclusive."

Again it is said in 69 C. J., sec. 2168, p. 975, "If a donee desires to renounce a gift presumably beneficial to him he should do so within a reasonable time."

Only two cases are cited in briefs of counsel that discuss and decide the question of what constitutes a reasonable time in which to renounce a beneficial bequest or devise in a will, viz.:—In re Estate of Howe, 112 N. J. Eq. 17, 163 Atl. 234, cited by appellants, and Strom v. Wood, 100 Kan. 556, 164 Pac. 1100, cited by respondent (on another point), and we have been unable to find any others.

In In re Estate of Howe, supra, Howe and his wife had both made wills, each in favor of the other. In an automobile accident Howe was killed instantly and his wife fatally injured. She died three days later without having regained consciousness. Both wills were duly probated. The bequest by the husband to the wife in his will was beneficial to her. Four months and thirteen days (the court speaks of it as "some four months") after the husband's death the administratrix with will annexed of the wife's estate executed, acknowledged and filed a written renunciation of the husband's will in favor of the wife. The case before the court arose over the assessment of a transfer tax assessed against the husband's bequest to his wife as a transfer by his will. The court said the basic question was whether the husband's estate passed to his wife under his will and that the determination of that question rested upon a determination as to whether or not the "renunciation" by the wife's administratrix was effective to prevent such transfer from taking place. The court recognized the rule that a presumption of acceptance exists where the gift is beneficial and that it is rebuttable and said that "without an acceptance by the intended transferee the intended transfer does not take place;" that in fact the wife had not accepted and therefore the transfer did not and never could take place unless someone had the right to elect for her whether to accept or reject. The court then, after discussing the question, held that because the wife had had no opportunity to elect, being unconscious from the time of her husband's death till her own, her said administratrix had the right and was the proper person to make such election. The issue thus narrowed down to the question whether or not the attempted renunciation was effective. The court held that it was not, *because not made within a reasonable time,* and that the administratrix, by failing to reject within a reasonable time, "accepted the gift on behalf of her intestate (testatrix?) and it thereby passed under the husband's will." The court further held that "The gift having been accepted, the subsequent attempt by the administrator to reject it was invalid and ineffectual." In the course of its opinion the court said:

"It must, however, be recognized that in addition, or as a corollary, to the presumption already mentioned—the presumption of the donee's acceptance of a beneficial gift in the absence of proof that he did not accept—a further presumption is necessitated by the conditions of our economic civilization and our system of property law—namely, that if such donee, having the opportunity to accept or reject such gift, fails to reject it within a reasonable time, he must be deemed to have accepted it. The title to property cannot be left uncertain indefinitely; the law does not require that acceptance be evidenced by any positive act (and it would seem quite impractical to attempt so to require); and it can only be in the rarest of instances that a donee would wish to reject a beneficial gift. There can therefore be no reasonable objection to the requirement that if he does wish to reject it he must do so by some positive, overt act, and within a reasonable time (or a time fixed by statute, as in the case of a widow entitled to dower)."

In Strom v. Wood, supra, a devisee, son of the testator, having a vested interest in remainder, subject to a then existing life estate (or estate for years) in the testator's widow, filed a renunciation of the will about five years after the testator's death. [In one or two places in the opinion the court says more than six years, but reference to the dates given in the court's statement of the facts shows it was about five years.] The attempted renunciation was held ineffective. Though there were other circumstances referred to by the court, *arguendo*, the decision, as we read the case, was in reality based upon the ground that the attempted renunciation was not made within a reasonable time. In neither the Howe nor the Strom case was any question raised as to the formal sufficiency of the attempted renunciation if timely made.

In the case before us the devise was beneficial. It was not burdened with conditions or obligations. Ely A. Sanders waited more than fifteen months before attempting to renounce the will. In our opinion that was more than a reasonable time. Our conclusion is that by such long delay he accepted the devise, as held in the Howe case, supra, and that his attempted renunciation was ineffectual, leaving him the owner of the devised land under his father's will.

There are a number of other interesting questions presented by briefs of counsel, which would require discussion if the attempted renunciation were held effective but in view of our conclusion on that question they need not be discussed. It follows that the judgment of the circuit court should be reversed. It is so ordered. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by Cooley, C., is adopted as the opinion of the court. All the judges concur.