WILLIAM KINGSTON (JAMES V. FRANK, as Administrator Cum Testamento Annexo of the Estate of WILLIAM F. KINGSTON) ET AL., Appellants, v. ST. LOUIS UNION TRUST COMPANY, a Corporation, as Surviving Trustee Under the Will of ELIZA McMILLAN ET AL. —154 S. W. (2d) 39.

Division Two, July 25, 1941.

Rehearing Denied, September 25, 1941.

*Hugo Monnig* for appellants.

*Isaac C. Orr* for St. Louis Union Trust Company.

452

*R. F. O'Bryen,* guardian *ad litem* for George Douglas Tolly Nairn, Judith Eula Nairn, Kingston Lawrence Ashbaugh and Phillip Ashbaugh, minors.

WESTHUES, C.—Appellants, plaintiffs *nisi*, filed this suit seeking the construction and interpretation of the last will and testament of Eliza McMillan, who died in the year 1915. The trial court, after a hearing, dismissed plaintiffs' petition, whereupon an appeal was taken.

Eliza McMillan executed the will in question on May 15, 1914, less than a year before she died. The will covers twenty pages of the abstract of the record. The clauses involved in this suit will be hereinafter set forth. Many of the provisions of the will are not in controversy, but it will be necessary to give a synopsis thereof, which we will attempt to do as briefly as possible. The estate was valued at over $2,000,000. By the second clause of the will the testatrix bequeathed certain property to her son and daughter-in-law. By clause three a number of special bequests were made, and the fourth clause contained instructions with reference to bequests made in the previous clauses. By the fifth clause the testatrix devised and bequeathed certain property, which was designated in her will as her estate, to William K. Bixby and the St. Louis Union Trust Company, or the survivor of them, in trust for certain purposes outlined in the latter provisions of the will. The trustees were vested with full power of management; also with authority to sell and convey any of the property and to reinvest the funds in securities they believed most advantageous to the estate. The trustees were directed, among other things, to pay life annuities, in amounts ranging from $50 to $250 per month, to fifty or more persons specifically named in the will. These persons lived in England, Canada and the United States. The trustees were also instructed to pay certain sums each month to a number of persons and charitable institutions; the payments to continue for a period of twenty years. Then followed the clauses which gave birth to this lawsuit. They read as follows:

"Upon the death of any of the said beneficiaries, except Charles Northrup, Norah Kingston Lawrence, Grace Ashbaugh, Dr. John J. Kingston, William Kingston, Florence Northrup, Eula Mabee, and Mrs. Jennie Cavers or in case of her death her stepdaughters Lynne and Jean, the amounts theretofore payable to them hereunder shall be added to the corpus or principal of the estate, for the benefit of my

454

residuary legatees, as hereinafter provided. If, however, either the said Norah Kingston Lawrence, Charles Northrup, Grace Ashbaugh, Dr. John J. Kingston, William Kingston, Florence Northrup, Eula Mabee or Mrs. Jennie Cavers or either of her said daughters, shall die during the continuance of this trust, leaving children or other descendants surviving them, such children or other descendants shall take their respective parent's share of said net income, per stirpes and not per capita.

"After the expiration of the period of twenty years from the date of my death and after the deaths of Josephine Warfield McMillan, Kate Fisher McCool, Hattie Caldwell, Madame Gustave Tonnot, Emily Westwood Lewis, Mary Lee Cadwell Davis, Paul Cadwell, Mary L. Dillon, Elizabeth Westwood, Mary Westwood Lee, Nellie McConnell, Minnie McConnell, Harriet Perkins, Mrs. A. P. T. de Haas, Lynne Cavers, Jean Cavers, Anna Peterson, Ellen Laughlin, Julia McConnell, Mabel Duane and her mother, Mrs. Elizabeth Dyer, Mrs. Cassie Adair, Mrs. Mary Goodwin, Miss Rebecca McMillan, Charles M. Prynne and his wife, E. L. Chute, Louisa M. Maury, Ellie Hankinson, Emily S. Jenkins, Margaret K. Beasley, Cassie M. Villa, Elizabeth G. Saunders, Lizzie Carroll, Mrs. Gertrude Webber, Harriet Sawyer Achorn, Harriet A. Sawyer, Edith M. Moses, Virginia Moses, Hattie Caldwell, Miss Ella Davock, James E. Chute, Emily Nelson, Margaret J. Nelson and Mary Dorgan, this trust shall cease and the property then composing the trust estate, together with the then unexpended or undivided income therefrom, shall be distributed equally, share and share alike, among, and paid to, the said Charles Northrup, Norah Kingston Lawrence, Grace Ashbaugh, Dr. John J. Kingston, William Kingston, Florence Northrup, Eula Mabee and Jennie Cavers or her said daughters, and their respective descendants, if any shall have died leaving other descendants surviving, per stirpes and not per capita; provided, that Mrs. Mary E. Kingston shall succeed to and take the interest of Dr. John J. Kingston in said income and afterwards in said principal."

The evidence disclosed that at the time of the trial many of the life annuitants had died, and that more than twenty years had elapsed since the creation of the trust. In 1916, annuities in the amount of $70,905 were paid. This was the largest amount ever paid in any one year in annuities. There was a gradual decrease in these payments, due to the death of annuitants, and in the year 1937 the amount paid was $37,320. In the year 1918 the trustees received their greatest income which amounted to $130,785. The total income was always above $64,000 with the exception of one year. If any further facts become necessary for determination of the questions presented we will state them in the course of the opinion.

The parties to the suit are, plaintiff: James V. Frank, administrator *cum testamento annexo* of the estates of William F. Kingston,

deceased; Florence Northrup, deceased and Mary E. Kingston, deceased; Florence Northrup McLeod; Eula Mabee; Grace Ashbaugh; Norah Kingston Lawrence; Lynne Cavers and Jean Cavers. It will be noted that plaintiffs consist of all the persons named in the residuary clause (with the exception of Jennie Cavers) or their legal representatives. These plaintiffs were relatives of the testatrix.

The defendants in the case are: The St. Louis Union Trust Company, the surviving trustee; all of the life annuitants and the children or descendants of plaintiffs. The minor children were represented in the case by a guardian *ad litem* who filed an answer in their behalf and briefed the case for them in this court. The adult descendants of plaintiffs, named as defendants, filed answers in which they consented that the relief prayed for in plaintiffs' petition be granted.

Plaintiffs insist that they were given a vested remainder in the corpus of the estate with the right of enjoyment or possession thereof at the termination of the trust. Plaintiffs also insist that they should be paid now, before the termination of the trust, such sums as would have been paid to the life annuitants had they lived. In other words, in the year 1916 the total sum required to pay the annuities was $70,905. In the year 1937 only $37,320 were required to discharge this obligation. Plaintiffs contend that the trustees should, under the terms of the will, pay to them each year the difference between the amount required to pay the annuities and the sum total of all the annuities provided for by the will. Plaintiffs also asked the court, in case it should hold that the trustees were not authorized to do this by the terms of the will, to terminate the trust insofar as to permit the trustees to pay such sums to plaintiffs. Plaintiffs say that the trust as to the fund representing the accumulation of lapsed annuities is a dry trust, and since all of the vested remaindermen agree and request to have the trust terminated the court should grant that request. The case was exceedingly well briefed by all parties to this suit. They agree to a great extent as to the law governing the case. They sharply disagree on the question of whether plaintiffs were, by the terms of the will, given a vested or a contingent remainder. They also disagree on the question of the existence of a dry trust as to that portion of the income from the corpus of the estate represented by the accumulation of lapsed annuities.

A number of well recognized rules of law must be kept in mind when construing or interpreting wills. The paramount and controlling rule to which all others must yield is that the intention of the testator governs unless such intention conflicts with some positive rule of law. The intention of the testator is to be gathered from the will as a whole. [Carter v. Boone County Trust Co., 338 Mo. 629, 92 S. W. (2d) 647, l. c. 651 (1-4).] Where there is a doubt as to the nature of a remainder interest it will be presumed to be a vested rather than a contingent remainder. That is to say, the law

favors vested remainders. [Gardner v. Vanlandingham et al., 334 Mo. 1054, 69 S. W. (2d) 947, l. c. 950 (3-5).]

Suppose we place ourselves in the position of the trustees and attempt to follow the instructions contained in the will. The first question presented is, what is to be done with the fund accumulated through lapsed annuities? The testatrix has said:

"Upon the death of any of the said beneficiaries, except" (certain persons named) "the amounts theretofore payable to them hereunder shall be added to the corpus or principal of the estate, for the benefit of my residuary legatees, as hereinafter provided."

In the residuary clause the testatrix said that when certain events came to pass,

". . . this trust shall cease and the property then composing the trust estate, together with the then unexpended or undivided income therefrom, shall be distributed equally, share and share alike, among, and paid to, the said" (naming certain persons) "and their· respective descendants, if any shall have died leaving other descendants surviving, per stirpes and not per capita;"

Plaintiffs, assuming that they are vested remaindermen, say that the testatrix, by using the words "for the benefit of my residuary legatees," meant the fund should be paid to them. Plaintiffs, citing many cases, also say as to that:

"Where property is devised or bequeathed to a person with a gift over to another conditioned upon the death of the first taker, the death referred to is death during the lifetime of the testatrix, so that if the first taker survives the testatrix he takes a vested interest."

We have no fault·to find with that rule. It applies unless the testatrix by her will provided otherwise, which we think she did. The directions in the will are specific. The amounts representing lapsed annuities, says the will, shall be added to the corpus or principal of the estate. The direction as to when the corpus shall be distributed is also specific as to time. Note:

". . . this trust shall cease and the property *then* composing the trust estate, together with the *then* unexpended or undivided income therefrom, shall be distributed . . ." (Italics ours.)

The time for a cessation of the trust is at the death of certain named persons. If the trustees should pay to the plaintiffs the fund represented by the lapsed annuities it would be in direct violation of the specific instructions contained in the will. Note also that in the first paragraph of the will above set forth the testatrix provided that in case any one of the named annuitants in that paragraph should die prior to the termination of the trust, then such payments as to the person named should be paid to the descendants, if any, of such person. There is not a word anywhere in the will that any other payments should be made to the plaintiffs or their descendants prior to the termination of the trust. We rule therefore

that under the terms of the will no authority exists to pay to plaintiffs the fund asked for in their petition.

Neither can we agree with plaintiffs that they have a vested remainder in the corpus of the estate. As said above, the intention of the testatrix must govern. While the law favors vested remainders, and where doubt exists declares a remainder to be vested rather than contingent, yet, that is not or should not be done where it is apparent that a contingent remainder was intended. The will reflects that it was carefully prepared. Many of its provisions have not been referred to in this opinion because they have no bearing on the issues and do not affect the plaintiffs' or the defendants' rights. But nowhere in the will did the testatrix indicate that plaintiffs or their descendants should, during the life of the trust, be paid any sums in excess of the annuities specified. Is it not reasonable to suppose that had the testatrix intended plaintiffs to have a greater share she would have made provision therefor? If we construe the will so as to create in plaintiffs a vested remainder, then plaintiffs have the power to make disposition thereof either by will or conveyance. In such a case, if a number of plaintiffs should dispose of their remainder and die prior to the termination of the trust, leaving descendants, what answers are the trustees to make to such descendants, who may be the minor defendants in this case or descendants yet unborn, in answer to a demand by them of their distributive share of the estate? The trustees have been directed that when the trust ceases they are to distribute the property then composing the trust estate, together with the then unexpended or undivided income, among plaintiffs and their respective descendants. The trustees will not be able to comply with that direction of the will if we should hold that plaintiffs were given a vested remainder in the corpus of the estate. Plaintiffs greatly rely on such cases as Sanders v. Jones, 347 Mo. 255, 147 S. W. (2d) 424; Garrett v. Damron, 110 S. W. (2d) 1112; Dunbar v. Sims, 283 Mo. 356, 222 S. W. 838. In each of these cases the testator devised a life estate, and after the termination of the life estate the fee was devised to certain remaindermen. For example, in the Dunbar case there was a devise of a life estate to the wife of the testator—

". . . and at her death, I will and devise that all my real estate shall go and vest absolutely in fee, in my seven children, . . ."

Plaintiffs argue that the words "at her death" in the Dunbar case have the same meaning and effect as to time as the testatrix in this case meant to convey by providing that at the termination of the trust the property should be delivered to certain persons. In the case now before us the testatrix did not create a life estate with a gift over. The life annuitants cannot be said to have a life estate in the corpus. They were only to be paid a certain stipulated sum each month during their life. The title to the estate was conveyed to

trustees to hold absolutely to manage, administer and dispose of as directed by the will with power to convey and reinvest, etc. The trustees, and they only, were given title with the power and direction to distribute the estate, at the happening of a certain event, to a class then living, being plaintiffs, if living, or their descendants. We rule therefore that plaintiffs right to share in the corpus of the estate is contingent upon the event that they be living at the time the trust ceases. They must be living at the time the trustees are authorized to distribute the estate to them. That ruling renders unnecessary a consideration of whether a dry trust exists as to the fund representing an accumulation of lapsed annuities.

Appellants insist that the portion of the will above set forth contains inconsistent clauses, in that the will provides the trust shall not cease until after the death of certain persons named, including Lynne and Jean Caver; and that the will directs the trustees to distribute the estate to certain persons named, including the said Lynne and Jean Cavers, in case their stepmother should die, which event has occurred. In this appellants are correct. The provisions of the will are inconsistent in this respect. It is our opinion, after a careful consideration of the provisions of the will, that the names Lynne and Jean Cavers were inadvertently included in the list of names of persons whose deaths were designated as the event to occur when the trust should cease. It will be noted that in the latter part of the will set forth above, Lynne and Jean Cavers were not mentioned by name but were referred to and designated merely as daughters of Jennie Cavers. The scrivener of the will was probably directed to include all life annuitants in the list of persons who must die before the trust should be terminated, except the persons named in the residuary clause. Therefore, since the names of Lynne and Jean Cavers did not appear in that clause they were included in the list. We therefore rule that the names of Lynne and Jean Cavers, appearing in the list of names of persons upon whose death the trust shall terminate, should be eliminated, and if both or either shall outlive the other persons named in that list the trust shall be terminated and Lynne and Jean Cavers shall then share in the corpus of the estate. That interpretation harmonizes with the evident intention of the testatrix, because she specifically stated that Lynne and Jean Cavers should share in the corpus of the estate if living at the termination of the trust.

Plaintiffs insist that even if this court should disagree with all of their contentions, yet the judgment of the trial court, dismissing plaintiffs' petition, must be reversed because plaintiffs asked for an interpretation of the will and are, under the declaratory judgment act, Sec. 1129, R. S. Mo. 1939, entitled to have the rights of the parties adjudicated. In this we think plaintiffs are correct.

Plaintiffs in their petition also asked the court to allow

them a reasonable sum as compensation for their counsel for services rendered in this cause. We think the court should have granted this request. This suit was filed to settle a legitimate dispute concerning a large trust estate. There may have been a difference of opinion as to whether certain provisions of the will were plain or ambiguous, but all agree that in one respect the terms of the will were inconsistent. The record disclosed that two previous suits had been filed which terminated in demurrers.

The judgment of the trial court dismissing plaintiffs' petition is therefore reversed, and the trial court is hereby directed to enter a judgment and decree consistent with this opinion and to allow plaintiffs a reasonable sum for the payment of legal services. It is so ordered. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.