Jesse L. UPHAUS, Plaintiff-Respondent,

v.

Pinke H. UPHAUS et al., Defendants-Respondents,

Charles Ellmaker et al., Defendants-Appellants.

No. 46388.

Supreme Court of Missouri,

Division No. 1.

Sept. 8, 1958.

Johnson & Butterfield, Marshall, for plaintiff-respondent.

Bellamy & Bellamy, Marshall, for defendants-respondents.

George M. Hare, Independence, for appellants, Lee H. Ellmaker, and others.

Aull & Aull, Lexington, for appellants, Charles Ellmaker, and others.

COIL, Commissioner.

■ Plaintiff-respondent obtained an interlocutory judgment for the partition of real estate in Saline County. Some of the defendants below are respondents and others are appellants. Inasmuch as the trial court adjudged that certain appellants who claimed contingent remainders in the real estate had no interest therein, title is directly involved and this court has jurisdiction.

J. H. Uphaus, who owned the farm in question, died testate on November 9, 1919, and left surviving his widow Lena (who died in March 1932), two sons, Jesse L. (plaintiff-respondent) and William (who died in 1954 and whose widow Pinke, as an individual and as administratrix of the estate of William is a defendant-respondent), and two daughters, Lydia Ellmaker (who died in 1953 leaving a widower and six children; those children are defendants-appellants) and Anna Drunert (defendant below, who did not appeal from the judgment and who had no children). Also

defendants-appellants are the grandchildren of Lydia Ellmaker, the sons and daughters of Lydia's six children who, as noted above, are defendants-appellants, and some of whom were minors and were, below and here, represented by a duly-appointed guardian ad litem. Clara H. Uphaus, the wife of plaintiff-respondent Jesse, was a nonappealing defendant.

Item I of the will of J. H. Uphaus, dated October 21, 1919, (containing the language giving rise to the present controversy) is as follows:

"Item I. I hereby give and devise to my son, Jesse L. Uphaus, subject to the dower interest of my wife, Lena Uphaus, for and during his natural life, the following described real estate situated in Saline County, Missouri, to-wit: The East half of the Southwest quarter of section Twenty (20) and the Northwest quarter of section twenty-nine (29), all in Township Fifty-one (51), Range Twenty-three (23).

"It is my further desire and will that, at the death of my said son, Jesse L. Uphaus, there shall be paid to his wife, Clara H. Uphaus, if she shall survive him, the sum of three thousand dollars ($3000.00) out of said real estate so devised to my said son, Jesse, and the remainder in said real estate, after the expiration of the life estate of my said son, Jesse, and after the payment of the said sum of three thousand dollars (3000.00), to said Clara H. Uphaus, shall go to and descend equally to the rest of my children or their descendants, ·share and share alike, per stirpes."

Item II directed the payment of debts, funeral expenses, and costs of administration out of testator's personal estate, but provided that if it was not sufficient "then it is my desire that my said son, Jesse, shall pay the remainder of said indebtedness, funeral expenses and costs of administration out of the real estate so devised to him." It was also provided that if the personal estate was in excess of debts, funeral expenses, and costs, the remainder of the personalty was to be "equally divided among all of my children, or their descendants, in case any of them should be dead."

Item III directed the sale of other described real estate by the executor with a bequest of $4,000 of the proceeds to him, the remainder of the proceeds to be paid "one half to my daughter, Elidia A. Ellmaker and the other half to my daughter, Anna E. Drunert."

Item IV directed the executor to sell other described real estate and, after payment to Lena, his widow, of her dower interest, the proceeds be divided "equally between my said daughters, Elidia A. Ellmaker and Anna E. Drunert, and in the event that my said daughter, Anna E. Drunert should not be living at the time of the sale of said real estate, her share to be divided equally among my other children or their descendants, if any of them be dead."

William M. Uphaus died intestate November 17, 1954, survived by his widow, Pinke, his brother, plaintiff-respondent Jesse, his sister, defendant Anna Drunert, and his nephews and nieces, defendants-appellants, the sons and daughters of his deceased sister, Lydia Ellmaker. Pinke, the widow, was appointed administratrix of William's estate and filed an election to take one half of his real and personal estate in lieu of dower, and a final settlement, reflecting payment of all debts, was made.

Plaintiff-respondent claimed below and claims here, and the trial court adjudged, that Item I of his father's will gave him a life estate in the real estate there described and that undivided one-third interests in the remainder of said real estate vested at testator's death in testator's other three children, William, Lydia, and Anna, subject to Jesse's life estate. and subject to a charge of $3,000 against said real estate in favor of defendant Clara H. Uphaus, the wife of plaintiff Jesse.

Plaintiff also claimed below and claims here, and the trial court also found, that

by reason of the death of his brother William and the election of the widow to take one half of the estate in lieu of dower, he, the plaintiff, inherited an undivided interest in the other half of the vested remainder owned by his brother William, and that as such remainderman he was entitled to bring and maintain this action for partition, even though he was also the life tenant.

Those appellants who are the children of Lydia Ellmaker, deceased, and who the court adjudged each owned a $\frac{7}{408}$ths interest in the real estate subject to plaintiff's life estate and the $3,000 contingent charge owned by Clara, contend that the court erred in failing to dismiss plaintiff's petition on the ground that it showed on its face that plaintiff was not entitled to partition and erred in decreeing partition as indicated for the reason that testator's will expressly and impliedly postponed partition until plaintiff's (the life tenant's) death and that to adjudge partition was contrary to testator's intention as shown by the language of the will and, for the further reason, that the remainders to testator's children are contingent and will not vest until the life tenant's death and thus the land is not subject to partition during the existence of the life estate.

Those appellants who are the grandchildren of Lydia Ellmaker and the children of the appellants last above mentioned, contend that the court erred in failing and refusing to adjudge that each of them owns an undivided contingent interest in the remainder of said real estate and in failing and refusing to adjudge that the land is not subject to partition until the expiration of the life estate.

We shall first consider whether the remainders were vested or contingent. In determining that question, we should give effect to the testator's intention as gathered from an examination of the will as a whole. When, as in the present will, testator's language is such that from it we are not able, unaided by auxiliary rules of construction, to arrive at testator's intention,

we reach for those established applicable rules. Primary among them is the basic governing principle "that the law favors the vesting of testamentary gifts or legacies at the earliest possible date, unless a contrary intention is manifested clearly. Where there is doubt as to the nature of the legacy or interest, it will be construed as vested rather than contingent, ' " 'because that usually better conforms to the testator's meaning' " ' [St. Louis Union Trust Co. v. Herf, (361 Mo. 548), 235 S.W.2d 241, 247(5)] and 'testators usually have in mind the actual enjoyment rather than the technical ownership of their property' [Gardner v. Vanlandingham, 334 Mo. 1054, 69 S.W.2d 947, 950; Union Nat. Bank in Kansas City v. Bunker, 232 Mo.App. 1062, 114 S.W.2d 193, 198]. In fact, it has been said pointedly that 'the universal rule is * * * that, wherever it is possible, an instrument will be so construed as not creating an estate subject to a condition, particularly a condition precedent' [Deacon v. St. Louis Union Trust Co., 271 Mo. 669, 197 S.W. 261, 265(4)], and that, ' "in the absence of anything in the will showing, either expressly or by implication, that testator intends that the title to his bounty is to be postponed, it is conclusively presumed that his gift is to vest at his death" ' [Grannemann v. Grannemann, Mo., 210 S.W.2d 105, 107]." McDougal v. McDougal, Mo.App., 279 S.W.2d 731, 737. See also Legg v. Wagner, Mo., 155 S.W.2d 146, 147 [1-7], and Schake v. Siem, Mo., 265 S.W.2d 338, 340 [3, 4].

There can be no doubt, and there is no contention to the contrary, that the will gave plaintiff, Jesse L. Uphaus, a life estate in the described real estate. We again set forth the second paragraph of Item I: "It is my further desire and will that, at the death of my said son, Jesse L. Uphaus, there shall be paid to his wife, Clara H. Uphaus, if she shall survive him, the sum of three thousand dollars ($3000.00) out of said real estate so devised to my said son, Jesse, and the remainder in said real estate, after the expiration of the life estate

of my said son, Jesse, and after the payment of the said sum of three thousand dollars (3000.00), to said Clara H. Uphaus, shall go to and descend equally to the rest of my children or their descendants, share and share alike, per stirpes." By that language testator said, in effect, at Jesse's death, if Clara is then living, pay her $3,000 "out of said real estate" and the remainder in said real estate after Jesse's death and after the $3,000 payment to Clara if she survives him, shall go in equal shares to the rest of my children or their descendants per stirpes.

■■ Remainder estates do not necessarily become contingent because they are limited to take effect on the death of a life tenant. Harlow v. Benning, 357 Mo. 266, 207 S.W.2d 471, 472, 473 [1–3]. And adverbs of time such as "after" or "at" often denote when the enjoyment of an estate is to commence. Thompson v. Thompson, Mo., 175 S.W.2d 885, 888 [2–8]. And we think testator's language, "after the expiration of the life estate * * * and after the payment of the said sum of three thousand dollars * * * to * * * Clara," were expressions which, in the absence of some clearly expressed contrary intent, referred to the time that the remaindermen were to have possession and not to the time when the estates were to vest. Muzzy v. Muzzy, 364 Mo. 373, 261 S.W.2d 927, 928 [1, 2]; Harlow v. Benning, supra, 207 S.W.2d 473 [4–7]; Legg v. Wagner, supra, 155 S.W.2d 148 [8, 9]; Sanders v. Jones, 347 Mo. 255, 147 S.W.2d 424, 425, 427 [2, 3]; Gardner v. Vanlandingham, 334 Mo. 1054, 69 S.W.2d 947.

■ Does testator's language directing that $3,000 be paid to Clara, the life tenant's wife, if she survived him, "out of said real estate so devised to my said son" manifest clearly an intention that the remainders were not to vest until the life tenant's death? We are of the opinion that it does not. As we construe that language in connection with the rest of Item I, testator meant that the $3,000 was to come "out of the real estate" in the sense that it was to be a charge against that real estate which could be enforced by Clara if she survived her husband. Cf. Thompson v. Thompson, supra, 175 S.W.2d 888 [9, 10]. We cannot agree with appellants that the language indicated that the testator intended that if Clara survived Jesse the real estate was to be converted to personalty and that thereby the remainders to the other children or their descendants were contingent and would not vest until the death of the life tenant. That the payment "out of said real estate" was to be a charge against the real estate is, we think, indicated by the fact that after testator had provided for the $3,000 payment "out of the real estate," he directed that "the remainder in said real estate" was to go to his children or their descendants. Clearly, it seems to us, testator was speaking of real estate as such and not of personalty when he directed that the "remainder in said real estate" was to go to and descend to his children or their descendants.

■ The only contingency involved, in so far as the remaindermen were concerned, was the value of their remainders, i. e., whether their remainders were each worth $1,000 less, depending upon whether Clara survived Jesse. And certainly that contingency had nothing to do with when the remainder estates vested. The fact that the *value* of a remainder is contingent upon certain events does not make the remainder contingent as to the time of its vesting. For example, where a testator leaves a life estate to his widow with full power to sell and convey all or any of it, as to her may seem proper, and provides that at her death the real estate shall go in equal shares to his named children, the fact that those children may not know until their mother's (life tenant's) death the value, if any, of the remainders they have received does not prevent those remainders from vesting at testator's death. Dunbar v. Sims, 283 Mo. 356, 222 S.W. 838, 839, 840.

■ Nor can we agree with appellants that testator's language that the remainder

"shall go to and descend equally to the rest of my children or their descendants, share and share alike, per stirpes" indicates that he intended that the remainder estates would not vest until the death of the life tenant. There is no justification for supposing that testator meant anything by that expression other than to provide that if any of the "rest of his children" predeceased him their respective descendants would take collectively the share their respective parent would have taken had he been living at testator's death. We should not be justified in assuming, as certain appellants suggest, that testator's will was a "death bed will" and thus that testator did not have in mind any of his children predeceasing him. It is true that the instant will was dated October 21 and that testator died on November 9 following, but that fact alone does not support the suggested inference and there is no other evidence relevant to the question or any language in the will indicating it was drawn in "contemplation of the near approach of death."

Recognizing that testator provided that the remainder go to his children *or* their descendants, per stirpes, still we cannot construe that language as indicating an intention that the descendants of a child were to take as substituted beneficiaries if such child died prior to the life tenant. On the contrary, testator clearly intended a grandchild to take only by descent through his parent in the event that parent did not survive testator. See Garrett v. Damron, Mo., 110 S.W.2d 1112, 1116, 1117; Sanders v. Jones, supra; Grannemann v. Grannemann, Mo., 210 S.W.2d 105.

Our examination of the whole will discloses no language which manifests clearly the intention that the remainder estates were not to vest immediately upon testator's death and we hold, therefore, that each of testator's children, other than Jesse, took by virtue of the will an undivided one-third vested interest in the real estate, subject to Jesse's life estate and subject to Clara's $3,000 charge against the real estate in the event she survives her husband.

Certain appellants contend also that even if the remainders provided for in Item I vested at testator's death, nevertheless, testator clearly expressed his intention to postpone any partition of the real estate until the death of the life tenant. It is true that even though vested remaindermen are cotenants of real estate and therefore may ordinarily partition subject to a life estate, still partition may not be had contrary to the intention of a testator expressed in his will. RSMo 1949, § 528.130, V.A.M.S.; Dennig v. Mispagel, Mo., 260 S.W. 72, 73 [1] [2]. And see Hill v. Hill, 261 Mo. 55, 168 S.W. 1165, 1166.

Appellants say that the provision in Item I that the estate was to go to and descend to the rest of the children *after* the death of the life tenant and *after* the payment of the $3,000 constituted an express postponement of the division of the remainder until after the death of the life tenant. What we have heretofore said with respect to the effect of that language as it affected the vesting of the remainders is equally applicable to appellants' contention as to its effect in postponing a division of the property. That is to say, if, as we have held, the words "after the expiration of the life estate" and "after" the $3,000 payment is made, relate to the commencement of the enjoyment of the estates and do not postpone their vesting until the life tenant's death, then it follows that those words would not indicate an intention to postpone the division of the property until the death of the life tenant. Appellants rely upon a line of cases of which Dennig v. Mispagel, supra; Gulick v. Huntley, 144 Mo. 241, 46 S.W. 154; Crossan v. Crossan, 303 Mo. 572, 262 S.W. 701; Hill v. Hill, supra; and Stewart v. Jones, 219 Mo. 614, 118 S.W. 1, are typical. In those cases, the reason the courts held that the testators intended to postpone partition was because the wills in each instance contained a provision to the effect that after the death of, or at the death of, or upon the death of the life tenant, the real estate was to be *divided* equally between certain devisees, or a pro-

vision that at the death of the life tenant the rest of the estate was to be sold and the proceeds *divided* equally among named remaindermen. The courts in those cases held that because the word "divided" was used and because that word meant to partition, testator had manifested clearly an intention that no partition (division) of the property should occur until the death of the life tenant.

There is no such expression in the instant will. There is no direction that the remainder be *divided* at the expiration of the life estate and after the payment of the $3,000 to Clara. The words "at the expiration" and "after the payment" as used in the instant will, in the absence of their being used in combination with a direction to *divide* after death or at the death or after the payment, indicate only the time of the commencement of the estates as opposed to the time of vesting or to the time of division of the property.

Appellants argue also that partition, if not expressly postponed by the language of the testator, was impliedly postponed because testator would not have intended that an allegedly inequitable situation would develop wherein the instant life tenant who testator intended would have only a life estate would, by virtue of an inheritance from a deceased brother, become a cotenant in a vested remainder and thereby be able to enforce partition of the property. The inequity suggested is that only the life tenant could be certain as to his future title, and that any other bidder at a partition sale would have to gamble on the length of the life of the life tenant and would receive no return on his investment in the interim; and that thus the life tenant probably would buy at too low a price. While there may be some merit in the suggestion that testator might not have envisioned the specific chain of events which brought about his son Jesse's, the life tenant's, being at the same time a co-owner

of a vested remainder, nevertheless, there is no language in the will which indicates that testator intended that in no event was his son Jesse ever to have any interest in the real estate other than a life estate. It would seem, therefore, that if testator did not in fact realize that the life tenant might also become a co-owner of a vested remainder, such was only because he did not take into account the various possibilities.

Appellants also contend that testator impliedly postponed partition until the death of the life tenant by directing a conversion of the real estate into personalty, by providing that $3,000 be paid out of the remainder at the life tenant's death if his wife Clara survived him. It is appellants' position that there was a positive direction from the executor to sell the real estate and convert it into personalty. From that premise, they argue that a sale of the land through a partition sale is contrary to the provisions of the will in that any sale of the real estate should be made only by the executor or administrator (RSMo 1949, § 473.457, V.A. M.S.), and that under those circumstances, at least in the absence of an election by all the beneficiaries to effect a reconversion, the land is not subject to partition. That contention has been answered by our prior holding that testator's direction to pay Clara $3,000 "out of the real estate" constituted a contingent $3,000 charge against the real estate and did not amount to a direction to convert the real estate to personalty.

It follows that the judgment of the trial court should be and it is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.